842 A.2d 300 (2004)
367 N.J. Super. 216
Alisa ZAPPAUNBULSO n/k/a Alisa Trombetta, Plaintiff-Respondent,
v.
Anthony M. ZAPPAUNBULSO, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 4, 2004.
Decided March 3, 2004.
*301 Christopher M. Manganello, Pitman, attorney for appellant.
Heather A. Wright, attorney for respondent.
Before Judges KING, LISA and REISNER.
The opinion of the court was delivered by REISNER, J.A.D.
This case presents the novel issue whether a trial court may order a defendant, already subject to a restraining order under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-29, to move out of a house in the victim's neighborhood. In this case defendant had rented the house and moved in, despite a pending motion by his ex-wife to preclude him from doing so. The trial judge ordered him to move out of the house within thirty days because defendant had a history of stalking and harassing his ex-wife and the trial judge found that his purpose in moving into her neighborhood was to continue his course of harassment. We affirm.

I
Because a claim of harassment, and any remedy imposed, must be viewed in light of the past history of domestic violence between the parties, we review the history that preceded the order at issue in this case. See N.J.S.A. 2C:25-29(a)(1); Cesare v. Cesare, 154 N.J. 394, 404-05, 713 A.2d 390 (1998).
Plaintiff Alisa Zappaunbulso (n/k/a Trombetta) (plaintiff) and Defendant Anthony Zappaunbulso (defendant) were married in 1993. In April 2001, plaintiff filed for divorce on grounds of extreme cruelty.
*302 On June 29, 2001, plaintiff sought a temporary restraining order (TRO) against defendant, claiming that he was harassing her. She alleged that he came home intoxicated after midnight, yelled and screamed at her when she refused his sexual advances, and threatened to "get even" with her. As part of her TRO application, plaintiff also certified to a past history of domestic violence. She alleged that several months before this incident, defendant kicked down the door while she was inside the bathroom. Defendant also threw chairs and other furniture at her in front of their two young children and would kick, punch or throw objects in her presence when he was angry. He constantly criticized and verbally abused her and would scream at her for no reason. Plaintiff also stated that, at times, the defendant would try to control her by following her throughout the house, restricting her ability to leave or take the children with her outside of the house.
As a result of the June 29, 2001 application, plaintiff was granted temporary custody of the children and exclusive possession of the marital residence. Defendant was barred from the residence and prohibited from harassing or stalking plaintiff. However, on July 19, 2001, after a final hearing, the trial court dismissed the domestic violence complaint and vacated the restraining order.
On July 24, 2001, plaintiff filed another domestic violence complaint and received a temporary restraining order on the basis of harassment by the defendant. She alleged that after the hearing on July 19, 2001, defendant called her cell phone multiple times throughout the day without leaving a message and then called the house telephone at 12:30 a.m. Fearing that the ringing phone would wake the children, plaintiff answered the phone and reminded defendant that he was not to call the house at unreasonable times. Four days later, defendant appeared at the house without notice and demanded access. Later that day, he called plaintiff numerous times on her cell phone from 10:25 p.m. to 1:24 a.m. without leaving a message. When he called the house telephone at 1:28 a.m., she answered because she did not want the phone to wake up the children. At that time defendant stated that he wished to see the children on Wednesday. When plaintiff informed him that he was not to call the house at unreasonable times and that he had to give notice before visiting the house, he screamed at her and told her that he could call and visit whenever he wanted. Plaintiff, shaken and fearful, had a friend stay with her through the night.
As a result of the July 24, 2001 complaint, an order was entered again granting plaintiff temporary custody of the children and exclusive possession of the marital residence. Defendant was prohibited from any further acts of domestic violence; he was barred from the residence and plaintiff's parents' residence and prohibited from contacting, harassing or stalking the plaintiff. In addition, defendant could not visit the children but could telephone them from 6:00 p.m. to 7:00 p.m. daily. Defendant was restricted to calling the plaintiff's cell phone only to alert her that he would be calling the children so that she would have them answer the telephone.
On August 1, 2001, the domestic violence complaint was dismissed incident to the settlement of the divorce case, and the restraints were incorporated into a consent order entered in the divorce action. Under the terms of the consent order, plaintiff was awarded sole possession of the house. Defendant was permitted visitation with the children from Tuesday, 4:30 p.m. to Wednesday, 8:30 a.m. and Friday, 4:30 *303 p.m. to Sunday, 6:00 p.m. He was required to pick-up and drop-off the children at the curbside of the marital residence; plaintiff was to stay inside the house during drop-off and pick-up. Defendant could only call plaintiff on her cell phone to discuss the children or to speak to the children from 9:00 a.m. to 8:00 p.m., although the children were able to call the defendant at any time. These restrictions on visitation and communication with the children were incorporated into the final judgment of divorce, which was entered on April 25, 2002.
On March 3, 2003, plaintiff filed another domestic violence complaint and another temporary restraining order was issued against defendant. Plaintiff alleged that defendant appeared outside her house "screaming, cursing and calling [her] crazy," and that he called her house and cell phone repeatedly. Defendant also made derogatory comments about her in the children's presence and threatened, in front of the children, that he would call the police and have her arrested. Plaintiff recited a history of additional abuse, alleging that defendant drove by her house often, banged on her garage door and looked through her front door window. He called plaintiff and screamed at her, threatening that he was going to take the children away from her. He would also appear and confront plaintiff at the children's school and at their dental appointments.
As a result of the March 3, 2003 complaint, defendant was again prohibited from further acts of domestic violence. He was barred from plaintiff's place of employment and from going to her residence, except for the curbside pick-up and drop-off of the children. He was prohibited from leaving the car during pick-up or drop-off. Defendant was also prohibited from communicating with, harassing or stalking plaintiff.
On March 12, 2003, Judge Allen-Jackson entered a Final Restraining Order continuing all of the previously imposed restraints. Defendant was also specifically prohibited from parking in plaintiff's neighbor's driveway and watching her home. The Children's Bill of Rights was incorporated in the order, specifying that the children would not be asked to "chose sides" between the parties, not be told about the divorce proceedings, and not be told "bad things" about the other parent.

II
In April 2003, plaintiff became aware that defendant might be planning to move into a house in her neighborhood. By letter dated April 2, 2003, her attorney advised defendant that this was a matter of concern and might violate the restraining order. On April 10, 2003, plaintiff's attorney filed a motion to enforce litigant's rights to "prohibit the defendant from moving into a house approximately two blocks and four homes away from the plaintiff." Plaintiff contended that defendant's planned move into a house at 20 Daytona Drive would violate the Prevention of Domestic Violence Act. She alleged that her house and 20 Daytona Drive are located within the same housing development in Sewell, Gloucester County, and that the defendant's proposed residence had a direct sight line to plaintiff's house. In her certification in support of the motion, she attested that defendant made the following threats to her:
a. I'm moving on your street whenever a house goes up for sale;
b. I'm gonna be your neighbor. You'll see I'll get you;
c. Once I get a house near you, I'm going back to court to, [sic] fight for custody, that way the kids won't have to change schools.
*304 Plaintiff further contended that defendant violated the Children's Bill of Rights by discussing the details of their case with the children, involving the children in the court proceedings, making derogatory statements about her to the children and telling the children that they would have to move in with him.
On April 16, 2003, defendant filed an emergency motion for custody of the children and requested that his house be considered the children's primary residence. The motion was made returnable on May 16, 2003; however, defendant withdrew it after plaintiff filed a cross-motion seeking reduction of his parenting time and for other relief.
On April 17, 2003, the defendant, pro se, filed an order to show cause seeking permission to move into 20 Daytona Drive. His papers acknowledged that plaintiff's motion to bar him from moving in was scheduled for May 2, 2003. Judge Allen-Jackson refused to entertain the order to show cause. Instead of waiting for a decision on the May 2, 2003 motion, defendant signed a lease on 20 Daytona Drive on April 23, 2003.
At the May 2, 2003 hearing before Judge Allen-Jackson, defendant appeared pro se. He contended he had searched for housing elsewhere, but could not find anything else as affordable and convenient. He denied that plaintiff's house was visible from his house or that they would need to pass each other's houses in order to enter or leave the housing development. He contended that his purpose in moving to Daytona Drive was not to harass his ex-wife, but to be closer to his children. He stated:
My children can walk to this home, they have friends here, ... and here they know the children. So, all they have to do is leave their mother's home, stay on this sidewalk, ride their bikes or walk, come up to here, turn and go right to [defendant's house].
Despite the judge's efforts to get the parties to agree on the exact location of their respective houses, including having each of them draw a diagram of the neighborhood, there remained a dispute as to exactly how close defendant's residence was to plaintiff's house, whether plaintiff's house could be observed from defendant's house, and whether plaintiff could reasonably enter and leave the development without passing defendant's house. As a result, the defendant asked the judge to look at the neighborhood and even offered to drive her there.
Accordingly, during a recess in the hearing, Judge Allen-Jackson visited the scene to get a better sense of the proximity between the two properties. Although she did not advise the parties of the visit in advance, she placed her observations on the record after the recess. When the hearing resumed, she stated:
During the luncheon recess I did take advantage of the opportunity of going to the area and driving by the two houses.... This is a very close situation in that it looked like there were approximately I think we counted 11 houses between the two parties, but the one street, it is though you had different addresses, it almost appears that Ms. Trombetta's house is at the end of the streetof the same street as Mr. Zappaunbulso....
Judge Allen-Jackson noted that the parties were last before her as a result of the defendant stalking and harassing the plaintiff, and on that occasion defendant had been parked in a neighbor's driveway and watching plaintiff's house. Judge Allen-Jackson concluded that "[n]ow it appears that every time she wants to leave in order to go some place she's got to pass by *305 [his house] in order to get back to the main street." She found forcing plaintiff to drive past defendant's house would violate the intent of the restraining order and would be intimidating, in violation of the Prevention of Domestic Violence Act. The court found that plaintiff would feel harassed or stalked every time she had to pass defendant's house. She also did not believe defendant's purported reasons for moving into the neighborhood.
Addressing defendant, the judge ruled that
I do not find that you made a thorough search and made this purchase or this lease purchase in good faith or merely because you said that you like the neighborhood and that's why you moved there. You've already been accused of parking on a neighbor's driveway watching her after the initial temporary restraints were given and the Court admonished you of that. I don't know whether it'sI didn't measure feet and distance, but it certainly doesn't seem like it's much more than 1,000 feet between the two houses and it appears that you are in a position of being able to watch the comings and goings of the plaintiff and further intimidate her, further exercise a great deal of control over her life by being able to watch and stalk herher comings and goings. Now, I'm not saying that there has been a stalking because certainly that is not what is being charged here, but the Domestic Violence Act is quite clear, she has been afforded certain protections under that act and part of those protections are to be free from any type of intimidation or any efforts to control her movements by the defendant and this severely limits her ability. It would require in order for her to avoid having contact with you she would have to substantially go a long distance out of her way to avoid coming past your house every day. I do not find that it was appropriate for you to lease a house right there at the beginning of the complex so that she would have to do that.
You were on notice that [plaintiff's attorney] was filing an order to have this matter brought back before the Court for the Court to consider prior to you signing the papers to move in, sir. Therefore, I'm going to grant Ms. Trombetta's motion. You will not be allowed to live there right there at that location, sir.
I also make a finding that it appears from the demeanor of Ms. Trombetta, from me watching her, she appeared to be quite upset, quite nervous, her demeanor appeared to be legitimate and genuine and that she appeared to be in fear. So, I find that this violates the spirit of the restraining order that has previously been issued against you.
Based on these findings, Judge Allen-Jackson executed an order restraining the defendant from residing at 20 Daytona Drive, Sewell, New Jersey and ordered him to vacate the residence in thirty days.

III
Domestic violence is a serious problem in our society. Described as a `pattern of abusive and controlling behavior injurious to its victims,'(citations omitted) domestic violence `persists as a grave threat to the family, particularly to women and children.' State v. Chenique-Puey, 145 N.J. 334, 340, 678 A.2d 694(1996). Cesare, supra, 154 N.J. at 397-98, 713 A.2d 390. In response, the Legislature enacted the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -34, `to assure the victims of domestic violence the maximum protection from abuse the law can provide.' Id. at 399, 713 A.2d 390 (quoting N.J.S.A. 2C:25-18).
*306 Pursuant to the Prevention of Domestic Violence Act (the Act), harassment is an act of domestic violence. N.J.S.A. 2C:25-19(a)(13). The statute on harassment states a person commits a petty disorderly persons offense if, with purpose to harass another, he ....(c) [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person. N.J.S.A. 2C:33-4.
Our courts have recognized that those who commit acts of domestic violence have an unhealthy need to control and dominate their partners and frequently do not stop their abusive behavior despite a court order. State v. Hoffman, 149 N.J. 564, 585, 695 A.2d 236 (1997). Therefore, in considering whether an asserted act of harassment meets the definition of domestic violence, the court must consider the defendant's past history of harassing behavior.
[C]onduct that does not constitute an invasion of privacy to the ordinary victim under subsection (a) might constitute harassment to the victim of past domestic abuse.... Therefore, ..., [i]n determining whether a defendant's conduct is likely to cause the required annoyance or alarm to the victim, that defendant's past conduct toward the victim and the relationship's history must be taken into account.
[Cesare, supra, 154 N.J. at 404-05, 713 A.2d 390 (quoting Hoffman, supra, 149 N.J. at 585, 695 A.2d 236)]
Remedies under the Act are liberally construed for the protection and safety of the victims and the public at large. Hoffman, supra, 149 N.J. at 590, 695 A.2d 236; Cesare, supra, 154 N.J. at 400, 713 A.2d 390; Stevenson v. Stevenson, 314 N.J.Super. 350, 361, 714 A.2d 986 (Ch. Div.1998); Desiato v. Abbott, 261 N.J.Super. 30, 33, 617 A.2d 678 (Ch.Div.1992). Accordingly, upon finding a violation of the Act, the court shall grant any relief necessary to prevent further abuse. N.J.S.A. 2C:25-29(b).
Specific remedies listed in the Act, N.J.S.A. 2C:25-29(b), include an order restraining the defendant from further acts of domestic violence, granting plaintiff possession of the marital residence, and restricting the defendant from communicating, stalking or harassing the victim. The Act further authorizes
(6) An order restraining the defendant from entering the residence, property, school, or place of employment of the victim or of other family or household members of the victim and requiring the defendant to stay away from any specified place that is named in the order and is frequented regularly by the victim or other family or household members.

[N.J.S.A. 2C:25-29(b)(6) (emphasis added)]
In construing the scope of the Act's protections, courts have looked beyond the four walls of a victim's residence. Depending on the factual circumstances, for example, parties living in different houses in the same neighborhood or separate apartments in the same apartment complex may be deemed as part of the same household for purposes of the Act. See Storch v. Sauerhoff, 334 N.J.Super. 226, 229-35, 757 A.2d 836 (Ch.Div.2000); South v. North, 304 N.J.Super. 104, 109-14, 698 A.2d 553 (Ch.Div.1997). We conclude that in appropriate circumstances an injunctive remedy against domestic violence may have the same broad scope.
Given defendant's documented history of stalking and harassing his ex-wife, and the restraining order limiting his access to the children, we conclude that Judge Allen-Jackson *307 properly enjoined him from residing in plaintiff's immediate neighborhood.
Although the trial judge did not hold a formal evidentiary hearing, both parties were placed under oath and had an opportunity to address the court. She was able to observe defendant's demeanor and judge the credibility of his explanation for moving into plaintiff's neighborhood. There was ample factual basis for the judge's conclusion that his purpose was not benign. The judge reasonably concluded that his move was a continuation of his efforts to harass plaintiff and exert control over her life. The judge further observed and noted plaintiff's frightened demeanor at the hearing. Generally, a reviewing court is bound by the trial court's findings when supported by adequate, substantial, credible evidence. Cesare, supra, 154 N.J. at 412, 713 A.2d 390 (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974)). Furthermore, special deference should be given to matrimonial courts because they possess special expertise in family related actions, including domestic violence. Id. at 412-13, 713 A.2d 390 (citing Brennan v. Orban, 145 N.J. 282, 304-05, 678 A.2d 667 (1996)).
Defendant also has a documented history of verbally abusive and threatening confrontations with plaintiff over access to their children. His threats to plaintiff that he would move into her neighborhood and get custody of the children, followed by his motion to obtain custody, speaks volumes about his purpose in leasing the house. Moreover, his statements to the court about the ease with which his children could visit him in his new home bespeaks an intent to circumvent the existing court order restricting his access to the children.
Based on her factual findings, the trial court properly invoked the court's power to "grant any relief necessary to prevent further abuse, N.J.S.A. 2C:25-29(b), including an order requiring the defendant to stay away from any specified place that... is frequented regularly by the victim.... N.J.S.A. 2C:25-29(b)(6). Defendant was aware of the pending motion to restrain him from moving into the house before he signed the lease and moved in. Ordering that defendant move out of the house was a fair and lawful remedy.
Finally, we reject defendant's belated challenge to the trial court's site visit. In light of the factual dispute over the relative locations of the parties' houses, the court, acting on defendant's request, visited the neighborhood. While she did not give the parties advance notice of the site visit, she properly placed her observations on the record as soon as the hearing resumed. Morris County Land Improvement Co. v. Parsippany-Troy Hills Tp., 40 N.J. 539, 548-49, 193 A.2d 232 (1963). Neither party objected to her observations as inaccurate. We find without merit defendant's contention that the judge was acting as a witness, in violation of N.J.R.E. 605. Rather, she was obtaining a clarification of the diagrams already provided by each party, by visiting the location in question. We are satisfied that the trial judge did not treat the site visit as evidence but as "a procedure to aid the trier of fact in understanding the evidence." Route 15 Associates v. Jefferson Tp., 187 N.J.Super. 481, 490, 455 A.2d 518 (App.Div.1982). Had both parties been represented by counsel the judge might well have invited counsel to accompany her. Morris County Land Improvement Co., supra, 40 N.J. at 549, 193 A.2d 232. However, given the history of domestic violence in this case, it is understandable that the judge would not have invited the parties to accompany her.

IV
Considering defendant's pattern of stalking and harassment, we are persuaded *308 that the order barring him from residing in plaintiff's immediate neighborhood and ordering him to move out of his leased premises, was authorized by the Prevention of Domestic Violence Act and was necessary to effectuate the existing restraining order.
We note that the trial court's order was stayed pending appeal, and the lease by its terms expires on April 30, 2004 unless defendant renews it. The stay is hereby vacated effective April 30, 2004.
Affirmed.