889 A.2d 1114 (2006)
382 N.J. Super. 514
James FINAMORE, Plaintiff-Appellant,
v.
Donna ARONSON (formerly Donna Finamore), Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 2005.
Decided February 2, 2006.
*1115 Gerald J. Monahan argued the cause for appellant.
Todd M. Sahner argued the cause for respondent (Marcus, Brody, Ford, Kessler & Sahner; Mr. Sahner on the brief).
Before Judges STERN, PARKER and LIHOTZ.
The opinion of the court was delivered by
LIHOTZ, J.T.C. (temporarily assigned).
Plaintiff, James Finamore, appeals the trial court's denial of his motion to attend the activities and events of the parties' son when defendant, Donna Aronson, is present because a final restraining order bars Finamore's contact with Aronson. Because the evidence does not support the trial court's findings, we reverse and remand for further proceedings.
The parties were married in 1989. Their son was born in July 1991. A final restraining order pursuant to the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35, was entered on October 6, 1992, then vacated at Aronson's request.
Aronson filed a second request for entry of a domestic violence restraining order on April 11, 1993. The temporary order included restraints prohibiting Finamore from having contact with Aronson, Aronson's son from a prior relationship, and the parties' son. Finamore was also barred from Aronson's home and place of employment. No visitation provisions were included.
A final hearing was scheduled for April 15, 1993.[1] On that date an order titled: "FINAL ORDER UNDER PREVENTION OF DOMESTIC VIOLENCE ACT" was entered. Actually, the order merely continued the temporary restraints of the April 11, 1993 order, and granted visitation between Finamore and the parties' son.[2] Orders entered on May 5, 1993 and May 26, 1993, generally continued the prior restraints. The parties later agreed, however, that the May 26, 1993 order constituted a final restraining order under the Act.
A dual final judgment of divorce, filed December 27, 1995, incorporated the parties' Separation and Property Settlement Agreement (Agreement), which referenced the continuation of the restraining order and also required the parties to directly communicate, confer, consult and attend counseling to address joint legal custody and parenting time issues.
Conflict continued. An order entered on January 28, 1998, vacated the custody provisions of the Agreement and granted Aronson's request for sole legal and residential custody. Finamore's November 1999 motion to vacate the final restraints, based on his contention that no evidentiary hearing was held, was denied. On appeal,[3] we sustained the trial court's finding that Finamore waived a final evidentiary hearing, reaffirming the determination that the May 26, 1993 order was a final restraining order. We remanded for a Carfagno[4] hearing to determine whether the restraints should be modified or vacated in *1116 light of "the recent history of the parties" and to "clarify the nature of any continuing restraints imposed upon" Finamore.
After a plenary hearing, the trial court ordered the continuation of all prior restraints and entered an amended final restraining order on January 28, 2002, which terminated all provisions of the Agreement requiring the parties to engage in direct communication. The amended final restraining order allowed only "written communication regarding parenting time [and] telephone contact limited to emergent matters relating to [the] health, welfare and safety of the child." Finamore was barred from Aronson's place of employment and home except to allow curbside drop-off and pick-up during parenting time. Visitation and child support were to continue as addressed in the dissolution matter.
Finamore's subsequent request to attend the child's activities was limitedly granted by order dated July 19, 2002, which permitted his attendance "only when [Aronson] is not present." The factual basis for that conclusion was not provided in this record.
On April 30, 2004, an order granting Finamore's request to attend the child's bar mitzvah but denying the additional request to attend school ceremonies and extracurricular activities of the child, was entered.[5]
Finamore filed another motion seeking a modification of parenting time and permission to attend the child's school activities. In denying this request, by order dated December 3, 2004, the court relied upon the July 19, 2002 determination, and permitted Finamore's attendance at the child's events only "when [Aronson] is not attending." The court's findings, as required by R. 1:7-4(a), were not included in this record.
Thereafter, Finamore submitted another request regarding his attendance at the child's activities, certifying:
After I received [the] Order of December 3, 2004[,] I requested [Aronson] to advise me if she would be attending [the child's] school activities as it is my intention to attend those activities [] she does not. Her response .... reflects that she will be "attending all of [the child's] activities.[]" As a result, I am precluded from attending any of his activities even if [Aronson] should for whatever reason fail to attend them.
Finamore's motion was denied on March 4, 2005. The court's conclusion was reflected by the handwritten notation on the order: "FRO prevents the requested [r]elief." This appeal followed.
Finamore challenges the March 4, 2005 order prohibiting him from attending the child's school and other activities unless Aronson is absent, asserting it adversely affects his parent-child relationship. He argues that although a final restraining order has been entered barring most contact with his former wife, the terms of the order do not prohibit his attendance at the child's school activities. If the prohibition is taken to its logical conclusion, he proffers, it reaches an illogical result that would exclude Finamore from all major life events of the child, including presumably his college graduation and wedding.
Aronson suggests Finamore's application seeks reconsideration of the December 3, 2004 order. She argues it is untimely and the relief sought, unwarranted, maintaining the order must be affirmed.
*1117 On appeal our role in reviewing the trial court's decision is limited. We are bound by the trial court's findings "when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 412, 713 A.2d 390 (1998) (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974)); Peterson v. Peterson, 374 N.J.Super. 116, 121, 863 A.2d 1059 (App.Div.2005).
Following a finding of domestic violence, expansive remedies are available under the Act designed for the protection and safety of the victim. N.J.S.A. 2C:25-29. The broad range of relief available to a trial court is designed to effectuate the remedial nature of the Act, which is to be liberally construed to achieve its salutary purposes. Cesare, supra, 154 N.J. at 400, 713 A.2d 390.
Under the Act, the court may issue specific restraints prohibiting: further domestic violence; contact with the victim or others which may preclude "the initiation of any communication likely to cause annoyance or alarm"; or "stalking or following, or threatening to harm, to stalk or to follow" the victim of domestic violence or any other person named in the order. N.J.S.A. 2C:25-29 b(1), (7) and (17).
The Act's protections also include barring the perpetrator of domestic violence from "entering the residence, property, school, or place of employment of the victim or of other family or household members of the victim and requiring the [perpetrator] to stay away from any specified place that is named in the order and is frequented regularly by the victim or other family or household members." N.J.S.A. 2C:25-29b(6).
The specific reliefs necessary to protect the victim must be distinctly described in the final restraining order. In this regard we have upheld a trial court's determination to restrain a defendant from residing in the immediate neighborhood of the victim. Zappaunbulso v. Zappaunbulso, 367 N.J.Super. 216, 226, 842 A.2d 300 (App. Div.2004).
The Domestic Violence Procedures Manual (2004), which "serves as a procedural guide that prescribes the steps in processing domestic violence matters, ... [and] continues the judiciary's ongoing system-wide program of establishing uniform standards and best practices" specifically sets forth the manner in which a court must address issues concurrently presented in dissolution (FM) and domestic violence (FV) cases.
If there is a pending FM, all reliefs except the restraints shall be incorporated into the FM with the restraints continuing in the FV docket and on the FRO. Subsequent applications or modifications for support, custody or parenting time should take place within the FM docket number. The FV should be reopened and modified as needed so the FM and FV are consistent.
[Emphasis in original.]
When parties, who are involved in domestic violence, are also involved in divorce, the trial court must remain mindful of the need for the continued protection of domestic violence victims when crafting orders, particularly those involving parenting time. "Parenting time arrangements shall not compromise any other remedy provided by the court by requiring or encouraging contact between the plaintiff and defendant." N.J.S.A. 2C:25-29b(3). Ideally, the same judge would be responsible for reviewing all matters involving the same family. If not, the reviewing judge must be provided with the domestic violence orders entered, to effectuate the restraints therein.
This case complies with these procedures, in as much as the ongoing parenting time dispute between these parties was properly addressed in the dissolution case *1118 and the dissolution judge was aware of the entry of the domestic violence restraining order.
The dissolution order now appealed references the restraining order as the justification for denying Finamore's motion. In its findings the trial court expressed a view that the entry of a final domestic violence restraining order "flat-out prohibit[s] the litigants in [] this case ... from being in the same place at the same time." It is this finding that cannot be supported.
The parties' January 28, 2002 amended final restraining order clearly prohibits Finamore from engaging in: "future acts of domestic violence," N.J.S.A. 2C:25-29b(1); "from having any (oral, written, personal or other) form of contact or communication" with Aronson, or "making or causing anyone else to make harassing communication," N.J.S.A. 2C:25-29b(7); and "stalking, following, or threatening harm, to stalk or to follow" Aronson, N.J.S.A. 2C:25-29b(17). Additionally, the restraints defined by N.J.S.A. 2C:25-29b(6) limit Finamore from the location of Aronson's "home & work" except to allow curbside drop-off and pick-up of the child for parenting time. Certainly, a restraint enjoining Finamore from attending school or other events frequented by Aronson could have been included in the final restraining order, if warranted. However, no such restraint was ordered. The prohibition in that order, barring Finamore from specific locations, does not extend beyond Aronson's residence and place of employment. It particularly does not bar Finamore from the child's school or from attending the child's extracurricular activities.
The first order to contain such a restriction is the July 19, 2002 dissolution order. The record on appeal is devoid of the basis for the court's findings of fact at the time the order was entered, so we cannot review the court's reasoning in reaching that conclusion. Nevertheless, Finamore did not appeal the order, making it binding upon the parties as a final disposition. See, A.B. v. S.E.W., 175 N.J. 588, 593, 818 A.2d 1270 (2003).
Finamore's recent motion sought review of this restriction and its perceived unintended effect of completely denying his attendance at the child's events, because Aronson attends all school and extracurricular events. Mindful that when "invoking the jurisdiction of the Family Part, each party assent[s] to the possibility that there will be some curtailment of what would otherwise be the ordinary rights concomitant to parenthood," Sacharow v. Sacharow, 177 N.J. 62, 80, 826 A.2d 710 (2003), Finamore objects to his exclusion in his son's life outside of the scheduled parenting time. We view Finamore's request as one for modification of the order based upon the current facts and circumstances.
Orders defining a parent's right with respect to contact with his child are subject to future revision depending on a showing of changed circumstances. Voit v. Voit, 317 N.J.Super. 103, 121, 721 A.2d 317 (Ch.Div.1998); see also Nufrio v. Nufrio, 341 N.J.Super. 548, 775 A.2d 637 (App.Div. 2001). Modification of the order may be appropriate if the moving party shows the modification requested is in the best interests of the child. Todd v. Sheridan, 268 N.J.Super. 387, 398, 633 A.2d 1009 (App. Div.1993); Mastropole v. Mastropole, 181 N.J.Super. 130, 136, 436 A.2d 955 (App. Div.1981). Similarly, a restriction of, or condition placed upon, a parent's visitation rights, must also be controlled by the best interests of the child. Sacharow, supra, 177 N.J. at 80, 826 A.2d 710. The child's "best interest" is fostered when both parents are involved with the child, assuring him of frequent and continuing contact with both parties. See N.J.S.A. 9:2-4.
When parents are additionally involved in domestic violence, the need to protect *1119 the "non-abusive spouse" is one consideration to be weighed by the court when evaluating the entry of an order that impacts the parent-child relationship. The Act mandates the "order shall protect the safety and well-being of the [victim of domestic violence] and minor children and shall specify the place and frequency of parenting time. Parenting time arrangements shall not compromise any other remedy provided by the court by requiring or encouraging contact" between the parties. N.J.S.A. 2C:25-29b(3). While striking this balance the court must keep sight of the benchmark of the best interest of the child. Sacharow, supra, 177 N.J. at 80, 826 A.2d 710.
In this matter, the court concluded the existing provisions of the parties' restraining order preclude the simultaneous presence of Finamore and Aronson at the child's school or activities. In fact it does not. The restraining order in this case prohibits contact and communication by Finamore with Aronson at all times; however, the trial court's presumption that the restraints in the domestic violence order restricted Finamore from any area Aronson might be, is error. While such relief is authorized under the Act by N.J.S.A. 2C:25-29b(6), this specific restriction was never ordered. It cannot be inferred or presumed.
Assuming the trial court's decision relied upon the prior order of July 19, 2002, reversal and remand remain warranted, because no findings of fact to support the resultant conclusion were made. R. 1:7-4(a). No mention is made of the significance, if any, of the facts asserted by Finamore to support a review of the prior order. Cummings v. Bahr, 295 N.J.Super. 374, 384, 685 A.2d 60 (App.Div.1996); D'Atria v. D'Atria, 242 N.J.Super. 392, 401, 576 A.2d 957 (Ch.Div.1990). The parties expressed positions were not assessed.
On remand the court must review Finamore's application as one requesting modification of the prior order restricting his attendance at the child's school and extracurricular events. The request must be analyzed in the context of the totality of all circumstances; not only the facts now alleged but also, the past history of domestic violence which can affect the context of any dispute. The court must review and weigh all interests, Grover v. Terlaje, 379 N.J.Super. 400, 410, 879 A.2d 138 (App. Div.2005), assessing the parties' positions as presented by the evidence and must specifically set forth findings of fact in balancing all interests. Cesare, supra, 154 N.J. at 405, 713 A.2d 390; Pazienza v. Camarata, 381 N.J.Super. 173, 186, 885 A.2d 455 (2005).
In this case Finamore, on the one hand, has a documented history of verbally abusive and confrontational behavior, particularly regarding issues involving the child. On the other hand, the court must consider whether restrictions on Finamore's attendance at the child's activities are necessary to protect Aronson. "[I]n the area of domestic violence, as in some other areas in our law, some people may attempt to use the process as a sword rather than as a shield. The judicial system must once again rely on the trial courts as the gatekeeper." State v. Hoffman, 149 N.J. 564, 586, 695 A.2d 236 (1997). Finally, an evaluation of the child's relationship with his father and his interest in having his father share in commemorations earmarking his achievements, must be weighed, if in fact, Aronson has staked claim to attendance at all the child's events to the total exclusion of Finamore.
We are of the view that a plenary hearing will be required to render a final decision, which shall be held within sixty days.
*1120 Reversed and remanded for proceedings consistent with this decision. We do not retain jurisdiction.
NOTES
[1] The temporary restraining order mistakenly lists the hearing date as April 15, 1991.
[2] The copy of the order provided in the supplemental appendix for the most part is illegible.
[3] Finamore was also found guilty of knowingly violating the restraining order, N.J.S.A. 2C:29-9b. He appealed that order contemporaneously with the other action. The judgment of conviction was reversed by decision dated March 21, 2001.
[4] Carfagno v. Carfagno, 288 N.J.Super. 424, 672 A.2d 751 (Ch.Div. 1995).
[5] The April 30, 2004 order was vacated and superceded by an order dated May 11, 2004. The new order addressed only Finamore's attendance at the bar mitzvah; not activity attendance. The final restraining order was amended to permit Finamore's attendance at the child's bar mitzvah.