**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3181-19

D.D.,

    Plaintiff-Appellant,

v.

T.L. (f/k/a T.D.),

    Defendant-Respondent.[1]

_____

Argued October 13, 2021 – Decided November 23, 2021

Before Judges Currier and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cape May County, Docket No. FM-05-0243-13.

Ronald G. Lieberman argued the cause for appellant (Adinolfi, Lieberman, Burick, Falkenstein, Roberto and Molotsky, PA, attorneys; Ronald G. Lieberman, of counsel and on the briefs).

Jane Molt argued the cause for respondent (Coalition Against Rape & Abuse Law Project, attorneys; Jane Molt, on the brief).

_____

[1] We use initials and pseudonyms to protect the parties' and minors' privacy.

PER CURIAM

In this post-judgment matrimonial appeal, plaintiff challenges the trial court's decision denying his request to modify defendant's parenting time and transfer residential custody of the minor child, Logan, to him. He contends the trial court abused its discretion in: (1) denying his request to modify parenting time; (2) holding him responsible for paying $10,000 towards defendant's counsel fees and holding him solely responsible for paying the guardian ad litem (GAL) fees; and (3) granting defendant's crossclaim to modify parenting time. Defendant also requests this court set standards for trial judges to follow when conducting child interviews. We affirm.

I.

The parties divorced in 2013 after seven years of marriage. At the time, Logan was five years old. Under their Marital Settlement Agreement (MSA), the parties shared legal and residential custody of their son. Plaintiff had parenting time on Thursdays after school until 10:00 a.m. on Sundays. Defendant had parenting time from 10:00 a.m. Sunday until Thursday morning. The parents also alternated parenting time on Wednesday nights.

In 2018, plaintiff filed a motion seeking to: (1) transfer residential custody of Logan to himself; (2) modify defendant's parenting time to no longer allow

overnights; (3) require that defendant's parenting time occur outside the presence of defendant's husband and her husband's son; (4) register Logan in plaintiff's school district; (5) direct the parties to share transportation of Logan; and (6) terminate plaintiff's child support obligation. Defendant filed a cross motion seeking, among other things, a modification of parenting time, a request that the child's activities take place in her neighborhood, and for a recalculation of child support.

Although a different Family Part judge initially presided over the matter, the ultimate hearing was conducted by Judge Benjamin Podolnick over five days between September and December 2019. Plaintiff presented himself, his current wife, a counselor from a program which focused on witnesses or victims of domestic violence, an elementary school counselor, and defendant's current husband as his witnesses. Defendant testified on her own behalf. The judge also interviewed Logan in camera.

Plaintiff described his residence as a four bedroom, two-and-a-half-bath home situated on 3/4 acres of land. He discussed family vacations and his second home located in Cape May County. Initially, plaintiff lived in the Cape May home which was only fifteen to twenty minutes from defendant's residence. However, he has since moved to his current residence, located approximately an

hour away from defendant. He has a nineteen-year-old son from a prior marriage and a child with his current wife. He is employed as a sergeant with the New Jersey State Park Police.

Plaintiff testified that he sought a change of custody because of certain incidents regarding defendant and her husband, as well as events that took place in defendant's home while her stepson was living there. Plaintiff admitted he unilaterally signed Logan up for a soccer league that played games in his town on Sundays. He conceded he was aware the soccer games interfered with defendant's parenting time.

Defendant's husband, Mark, testified that he and defendant have two children together and they experience financial issues from time to time. He also has a son, Larry, who is the same age as Logan. Mark advised that Larry suffers from several mental health issues, specifically attention deficit hyperactivity disorder, oppositional defiant disorder, disruptive mood dysregulation disorder, and bipolar disorder, for which he takes medication. Mark has had full custody of Larry since he was four years old and he described the treatment the child has undergone, including counseling, in-home therapy, and periods of hospitalization.

According to Mark, Logan was aware of Larry's mental health issues, but

he stated the boys played together, and there were no issues between them. He stated that Logan was not afraid of Larry.

A catalyst to plaintiff's motion was an event that occurred at defendant's home in November 2017. Mark explained that Larry was having an emotional episode and was trying to jump out of the second story window of his bedroom. Mark pulled Larry out of the window multiple times, locked, and blocked the window, and "smacked" him on his butt. He stated Logan was downstairs in the living room when this incident occurred and heard what was happening. Mark reported the incident to Larry's therapist, who in turn reported it to the Division of Child Protection and Permanency (DCPP). He stated DCPP implemented a safety plan under which he was not allowed to be alone with the children, but neither he nor the children were removed from the home. Mark also completed parenting classes where he learned different methods to handle Larry.

Larry voluntarily left Mark's home in November 2018 to live with his mother. Mark stated that Larry does return to Mark's home to visit and stay overnight, but there had been no further incidents and the children "got along fine."

After plaintiff learned of the incident involving Larry, either from defendant or DCPP, he thought Logan was behaving differently and he enrolled

5

Logan in a program for domestic violence victims and witnesses. He did not inform defendant he was doing this nor did he seek her consent. Logan attended the program from April to August 2018. The counselor from the program stated the intake risk assessment revealed Logan was a witness to domestic violence but he did not meet the criteria required for a diagnosis of post-traumatic stress disorder. As part of the program, Logan created a safety plan to use as a coping mechanism if he were to witness Larry and Mark arguing.

The counselor stated that after Logan completed the program, she did not think he needed any further support. However, plaintiff and his wife wanted Logan to continue with counseling and so the counselor recommended a second program.

Defendant also testified, stating she worked several jobs and lives in a rented home with Mark, Logan, and a younger child. She advised the court there were times she was behind in paying rent and on her bills. In discussing the issues with Larry, defendant acknowledged the challenges the family faced regarding his disabilities, however, she said he and Logan had a good relationship.

In addressing the November 2017 incident, defendant said Logan was "impacted" by the events but she did not observe any changes in his behavior

6

afterwards. When asked about Logan attending counseling, defendant admitted she was "mad" because plaintiff did not inform her about it. She only learned Logan was attending counseling from her attorney. She did not want Logan attending the program and she asked her attorney to request the counselling stop because DCPP informed her it was not necessary, and she was upset that she did not have any input despite the parties' joint legal custody arrangement.

In discussing soccer, defendant testified she encouraged Logan to play but admitted that she "resented" the fact that the games occurred during her Sunday parenting time because it was not close to her home. The soccer schedule for the team plaintiff chose limited the activities defendant wanted to do with Logan, such as throwing parties for him or having him attend activities with his friends in her neighborhood. She explained she told plaintiff to stop scheduling Logan for activities during her parenting time and there was a travel soccer team Logan could play on in her neighborhood. Her main contention was that she did not have a full weekend day with Logan under the existing parenting time schedule and that plaintiff had further limited that time with the soccer league he had unilaterally chosen.

A-3181-19

The court also conducted an in camera interview with Logan. At the time, Logan was eleven years old and in the sixth grade. He said he liked school and enjoyed playing soccer.

Logan said that when he was at plaintiff's house, he had a lot of friends in the neighborhood, including his best friend, and was comfortable staying there. He got along with plaintiff's wife and plaintiff's eighteen-year-old son.

Logan said when he was at defendant's house, he also had a lot of friends and was comfortable staying there. He stated that when Larry lived at the house there was more yelling and it was calmer since Larry had moved to his mother's house. He also said he got along well with Mark and described a recent outing.

When asked about his living arrangements, Logan said he liked the current plan and was happy. He did not want to change his school to the one in plaintiff's area, stating he had "a ton of friends" at his current school.

In describing the interview, Judge Podolnick noted that Logan "presented as a well-adjusted preteen," was "pleasant and cooperative," although he seemed "bored" with the whole interview. The judge also found "it was apparent that [Logan] was not being coached although he was certainly aware that he was the subject of a custody dispute between his parents."

8

II.

On March 4, 2020, Judge Podolnick issued a comprehensive, well-reasoned written decision and accompanying order denying plaintiff's application for a change of custody and granting defendant's request for a revised parenting schedule – to allow defendant parenting time including at least one full weekend per month. The judge also awarded defendant $10,000 in attorney's fees and ordered plaintiff to pay the guardian ad litem's (GAL) fees of $3725.

In assessing the parties' credibility, Judge Podolnick found plaintiff attempted to "mislead" the court which affected his credibility. When presented with information, the judge found plaintiff "cherry picked data" and only testified to the information that benefitted him, ignoring the contradictory information. The court concluded "that [p]laintiff attempted [to] purposely ignore relevant evidence and hope[d] that such information would not be brought out on cross examination. In the court's view, this had a detrimental effect on [p]laintiff's credibility as a witness."

The judge further observed that "[p]laintiff was surprisingly emotionless while testifying and had a rather flat demeanor," considering the emotionally charged issues. However, the judge found plaintiff provided straightforward

responses and did not embellish his answers. The judge also commented that "[i]n short, [p]laintiff testified that his home is nicer and a better f[i]t for Logan than [d]efendant's home."

In addressing the issue whether the parties had discussed the litigation with Logan in contravention of the court's order, the judge found plaintiff's testimony contradicted that given by his wife. He stated, "[w]hile this is not a major nor dispositive point in this litigation, it certainly calls into question [p]laintiff's candor with the court as it was clear he was afraid that admitting he had discussed the litigation with Logan would somehow have hurt his claims."

In considering Mark's testimony, Judge Podolnick found he was a credible witness. The court observed that Mark made good eye contact, "did not embellish his version of events nor did he down-play their serious nature; and he was straightforward when addressing his family's financial troubles."

The judge also acknowledged the challenges Mark encountered in raising Larry, specifically stating "[t]here [was] no question that [Mark], [d]efendant, and their family, sought help in dealing with a child who has serious mental health issues." As to the November 2017 incident, the judge stated that

> [w]hile physical abuse will never be condoned by this
> court, the court can certainly understand the witness's
> reaction to an emotionally charged situation. [Mark's]
> son was trying to jump out of a second story window.

10

> In the heat of that moment, [Mark] acted instantaneously to stop [Larry] from jumping. His reaction was visceral and done with the intent to protect [Larry] from hurting himself. While it is easy to second guess [Mark's] actions, there is certainly a reasonable explanation for what happened.

Judge Podolnick also found defendant credible. He stated she was candid and honest throughout her testimony, and in addressing the incidents plaintiff presented regarding school and soccer. The court noted defendant's candor regarding her frustration with plaintiff, particularly with his unilateral decision to schedule Logan for soccer during her parenting time.

In his thorough decision, Judge Podolnick considered whether there were changed circumstances and analyzed each factor as required under N.J.S.A. 9:2-4(c). He concluded that:

> (1) [p]laintiff has drastically failed to meet his burden under Terry v. Terry, 270 N.J. Super. 105 (App. Div. 1994), Beck v. Beck, 86 N.J. 480 (1981), Mastropole v. Mastropol[e], 181 N.J. Super[.] 130 (1981); (2) it [was in] Logan's best interest to remain in his current school district; (3) [p]laintiff attempted to mislead this court through a portion of his testimony and that such testimony was elicited in bad faith; (4) [p]laintiff purposely violated the terms and conditions of the parties' agreed upon Final Judgment of Divorce and Settlement Agreement by scheduling Logan for activities during [d]efendant's parenting time; (5) initially [p]laintiff filed this litigation in good faith but continued the litigation in bad faith when he had no evidence that Logan suffered significant trauma, that

11

the [DCPP] cases were either dismissed or found to be "not established," when the criminal charges against [Mark] were outright dismissed by the prosecutor and because he continued to go forward with this litigation despite [Larry] leaving the home. Plaintiff also failed to present any evidence whatsoever that there were any detrimental activities occurring in [d]efendant's home after [Larry] left the home; (6) [p]laintiff exaggerated the alleged effects on Logan resulting from [Larry's] episodes and those alleged effects were unsupported by any expert testimony, or any quantifiable data or testing; (7) the various incidents identified by [p]laintiff for which he claims prove that [d]efendant is a bad parent do not collectively support a change in custody; and (8) [p]laintiff engaged Logan in counseling without consulting [d]efendant despite the joint custodial arrangement.

Therefore, the judge denied plaintiff's application to designate him the parent of primary residence and to change Logan's school district. In considering defendant's request to modify parenting time, the court found she established a change of circumstances when plaintiff moved to his principal residence located an hour away from defendant's home. Therefore, the judge ordered the parties to participate in mediation to establish a new parenting time schedule that included defendant having Logan at least one full weekend per month.

The judge also considered both parties' requests for counsel fees. After considering the required factors under Rule 5:3-5(c), the court granted defendant

$10,000 in fees and denied plaintiff's motion. The judge also ordered plaintiff to pay the GAL fees totaling $3725.

## III.

On appeal, plaintiff asserts the court erred in denying his request for a change in custody and granting defendant's request for a change of parenting time. Plaintiff also challenges the award of counsel fees to defendant and the order requiring him to pay the GAL fees.

## A.

A party seeking a modification of custody must show a change in circumstances. Bisbing v. Bisbing, 230 N.J. 309, 322 (2017). The changed circumstances standard applies to all modification requests, including those seeking an increase or decrease in parenting time. Finamore v. Aronson, 382 N.J. Super. 514, 522 (App. Div. 2006).

In addition, N.J.S.A. 9:2-4(c) requires a trial court to consider fourteen enumerated factors when considering an award or change of custody. Under the statute, the court must make a record of its reasons for its custody decision and "must reference the pertinent statutory criteria with some specificity . . . ." Kinsella v. Kinsella, 150 N.J. 276, 317 (1997) (quoting Terry, 270 N.J. Super. at 119). The court must not lose sight of the "primary and overarching

consideration" of what is in the best interests of the child. <u>Ibid</u>. As the <u>Kinsella</u> court stated, "[t]he best-interest analysis is an additional requirement 'superimposed upon an analysis of the statutory scheme'" and one which requires that the court consider all material evidence which has bearing on the custody decision. <u>Ibid.</u> (quoting <u>Terry</u>, 270 N.J. Super. at 119).

We will not disturb the factual findings and legal conclusions of a trial court unless we are convinced "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." <u>Cesare v. Cesare</u>, 154 N.J. 394, 412 (1998) (quoting <u>Rova Farms Resort, Inc. v. Invs. Ins. Co.</u>, 65 N.J. 474, 484 (1974)). This deference is considered especially appropriate in cases where "the evidence is largely testimonial and involves questions of credibility." <u>Ibid.</u> (quoting <u>In re Return of Weapons to J.W.D.</u>, 149 N.J. 108, 117 (1997)).

As stated, the trial court meticulously addressed the statutory best interest factors and after analyzing the factors, focused on whether plaintiff demonstrated changed circumstances to warrant a change of custody. Thereafter, the court concluded that plaintiff had failed to meet his burden to support any change to the existing custody agreement.

The court also found plaintiff was misleading in his testimony and acted in bad faith in pursuing the litigation. In addition, the court noted it was plaintiff who violated the terms of the parties' settlement agreement and judgment of divorce by committing Logan to activities during defendant's parenting time and enrolling the child into a counselling program without consulting defendant.

However, the judge did find a change of circumstances pertinent to the parties' parenting time as a result of plaintiff's move to a residence an hour away from his prior location and from defendant's home. Therefore, the parties were ordered to participate in mediation to establish a new parenting schedule to include defendant having at least one full weekend a month with Logan.

Our review of the record refutes plaintiff's contention that the judge's findings regarding the statutory factors were not supported by the evidence. To the contrary, the court made detailed findings, referring to the evidence presented during the hearing. The court also made specific credibility assessments. Any further arguments regarding the judge's findings lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

B.

15

As stated, plaintiff also challenges the court's finding that his move to a residence an hour away from defendant constituted a change of circumstances requiring a modification of the parenting time schedule. Although plaintiff acknowledges defendant requested the parenting time modification in her crossclaim, he states she subsequently abandoned the claim. We are unconvinced.

The entire trial was about parenting time. Defendant discussed her desire for weekend parenting time during her testimony. In his written decision, the court found the relocation "significantly alter[ed] the basis upon which the original parenting time agreement was negotiated." In addressing plaintiff's appellate contentions, the trial judge stated in his Rule 2:5-1(b) amplification of reasons that plaintiff's assertion that defendant abandoned the claim was a "total mischaracterization." The court pointed out that defendant again addressed the issue in her written closing submissions, requesting "either additional parenting time or a different parenting time schedule." We discern no error in the court's ruling finding a change in circumstances and referring the parties to mediation.[2]

---

[2] During oral argument, counsel advised this court that the parties were unsuccessful at mediation in reaching an agreement regarding a new parenting time. Therefore, if the parties continue at an impasse, the trial court will establish a parenting time schedule to include at least one full weekend each month for defendant.

## C.

We turn to the award of fees. The court ordered plaintiff to pay the outstanding GAL fees and awarded defendant $10,000 in attorney's fees.

An award of attorney's fees in matrimonial matters is discretionary. Slutsky v. Slutsky, 451 N.J. Super. 332, 365 (App. Div. 2017) (citing Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)). Under Rule 4:42-9(b) and Rule 5:3-5(d), counsel must submit an affidavit of services that addresses the factors listed in RPC 1.5(a) and itemizes disbursements for which reimbursement is sought. The Family Part court must also consider the Rule 5:3-5(c) factors. A "fee award is accorded substantial deference and will be disturbed only in the clearest case of abuse of discretion." Yueh v. Yueh, 329 N.J. Super. 447, 466 (App. Div. 2000).

Here, Judge Podolnick carefully considered the statutory factors and stated which he found relevant and why. He concluded the factors weighed in favor of an award of fees to defendant. The judge also reviewed the submitted certification of services and found defense counsel's hourly rate to be reasonable for the geographical location. Although counsel requested $32,680, the court only awarded $10,000. The court did not award defendant any fees incurred with work done on the first trial.

In his amplification, the judge reiterated the reasons for the award of fees to defendant: "Plaintiff's bad faith in pursuing the litigation; Plaintiff's mischaracterization of evidence during the trial, thereby attempting to mislead the trial court; the parties' ability to pay; and the end result of the litigation." We are satisfied the judge did not abuse his discretion in the award of counsel fees.

We also review the order requiring plaintiff to pay the GAL fees for an abuse of discretion. D.H. v. D.K., 251 N.J. Super. 558, 565-66 (App. Div. 1991). Rule 5:8B(d) requires the GAL to "submit a certification of services at the conclusion of the matter, on notice to the parties, who will thereafter be afforded the right to respond prior to the court fixing the final fee."

At the start of the first trial, an issue arose whether the therapy program counselor's testimony regarding Logan's testimony was privileged and whether the parents, who agreed to allow the testimony, could waive the privilege. The issue was not resolved, and the trial was not completed. The issue then arose again before Judge Podolnick on the first day of trial before him. The judge was perturbed that neither party had informed him prior to the start of trial of the unresolved issue and he determined that the parties' conflicting positions required the appointment of a GAL.

18 <span>A-3181-19</span>

When the judge appointed the GAL, he initially stated that both parties would be equally responsible for her fees. However, when ruling on the privilege issue, the court found the payment and allocation of the GAL's fees would be determined after she submitted her certification of services. As stated, the GAL did submit the required certification and the judge found her fees were reasonable and necessary.

In directing plaintiff to pay the guardian's fees, the court noted that, despite plaintiff knowing the privilege issue was unresolved and that it involved his first witness, plaintiff failed to notify the court in advance and thus the court "was compelled to appoint a [GAL] to represent Logan to address the privilege issue."

The GAL was only appointed for the limited purpose of addressing the privilege issue. The counselor was plaintiff's first witness and her testimony was offered to support his claim for a change in custody. We discern no abuse of discretion in the court's order directing plaintiff to pay the GAL fees.

D.

Lastly, plaintiff requests this court to set standards for trial courts to consider and adhere to when conducting an in camera child interview. We decline to do so.

19

In the first instance, plaintiff did not raise this issue before the trial court. In addition, there is already a structure in place: Rule 5:8-6 – regarding the procedure to follow when conducting an in camera interview of a child. Judge Podolnick complied with that rule. Plaintiff submitted questions to the court that he desired be asked of his son. The parties were provided with a transcript of the interview.

On appeal, plaintiff asserts the court did not ask all of the questions he wanted. In his amplification, the judge stated he "found many of the questions posed by [p]laintiff's counsel were irrelevant and redundant." The judge advised he "was well aware and acquainted with the material issues in dispute and focused the in camera child interview on those particular issues." The judge noted he "was able to gain sufficient insight into the minor child's feelings, his residential situation, his relationship with all relevant parties, as well as his thoughts and desires through the numerous questions posed by the trial court during the . . . interview."

The judge explained that he took "into consideration that a certain degree of trust and mutual respect between the court and a child is more likely to elicit a genuine and reliable response from a child during a[n] . . . interview." We are satisfied Judge Podolnick conducted an appropriate, insightful, and thorough

interview of the child. He elicited the information he needed to reach his decision on the parties' applications without causing any collateral damage to the child. As a court rule already governs an in camera child interview, we decline the invitation to take any further action.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3181-19