# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2531-22

E.S.W.,

    Plaintiff-Appellant,

v.

D.A.P.,

    Defendant-Respondent.

_____

Argued May 28, 2024 - Decided July 26, 2024

Before Judges Berdote Byrne and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-0498-23.

E.S.W., appellant, argued the cause pro se.

Frank J. La Rocca argued the cause for respondent (LaRocca Hornik Rosen Greenberg & Crupi, LLC, attorneys; Ronald H. Carlin, of counsel and on the brief.)

PER CURIAM

Plaintiff, E.S.W.[1], appeals from the dismissal of his temporary restraining order (TRO), issued pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, against defendant D.A.P., his former wife. Plaintiff sought and obtained a TRO against defendant based upon allegations of terroristic threats, N.J.S.A. 2C:12-3. After the judge assigned to the domestic violence matter (FV judge) denied defendant's oral motion to dismiss the TRO, defendant brought an Order to Show Cause (OTSC) before the Family Part judge handling the parenting time post-judgment issues (FM judge) seeking the same relief. The FM judge dismissed the TRO without a hearing. Because the FM judge failed to make any findings of fact or conclusions of law regarding the predicate act of domestic violence or whether a final restraining order (FRO) was necessary to protect plaintiff from defendant, we reverse, reinstate the TRO, and remand for an FRO hearing before a different judge.

## I.

The parties were married for six years and share two children born of the marriage. They divorced in 2009. There have been a series of contentious post-judgment applications. By 2018, plaintiff's parenting time was suspended, and several proceedings regarding custody and visitation followed.

---

[1] We use initials to identify the parties in accordance with Rule 1:38-3(d)(10).

On September 24, 2022, plaintiff obtained a TRO against defendant alleging she made terroristic threats against him during a phone call. Plaintiff alleged defendant stated she wanted him dead and would have her father kill him. With respect to the history of domestic violence, plaintiff reported defendant's father allegedly threatened to have him killed on separate occasions.

Four days later, the parties appeared before the DV judge on the first listing of the TRO. Defendant was represented by counsel and plaintiff was self-represented. During the hearing, plaintiff requested the court enter an order preemptively granting him custody of their then seventeen-year-old daughter based upon the allegations of the TRO. The DV judge denied the request, stating it was "not going to preemptively affect custody" and deferred the issue of custody to the FRO hearing. Defendant then made an oral application for dismissal and dissolution of the restraints based upon a lack of a prima facie showing of a terroristic threat. The court reviewed the allegations and determined there was a sufficient prima facie case set forth in the TRO and plaintiff was entitled to the opportunity to prove the predicate act occurred and an FRO was necessary to protect him from defendant. The court then scheduled the FRO hearing for October 12, 2022.

On October 7, defendant filed an OTSC under the FM docket, before the FM judge handling the post-judgment parenting time matters, requesting the

3

court enter an order preemptively awarding defendant's sister temporary custody of the parties' daughter if defendant were to be arrested for violation of the TRO before the FRO hearing. Defendant argued the TRO was frivolous, and she feared plaintiff would falsely accuse her of violating the TRO in an attempt to obtain custody of their daughter.

The FM judge reviewed the TRO and found "no reasonable objective person, even if the conversation [occurred and defendant] said what she said[,] would be in fear that that was a possibility that could be carried, a death threat could be carried out." The FM judge then dismissed plaintiff's TRO without hearing testimony from either party. This appeal followed.

II.

Our review of the decisions of the trial court in a domestic violence matter is generally limited. C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). When no hearing has been conducted, however, we review to determine if there was prima facie evidence of a predicate act.

Before an FRO may be issued or dismissed without the consent of the plaintiff, the court must engage in a two-prong analysis and make specific factual findings and legal conclusions. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). First, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the

4

predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. Next, if the court finds plaintiff has proven a predicate act, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to - 29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b)); see also J.D., 207 N.J. at 476.

The FM judge erred in dismissing the TRO without a hearing. After defendant was denied dismissal of the TRO by the FV judge, defendant's counsel attempted to circumvent that ruling by filing an OTSC before the FM judge. The FM judge's role was limited to reviewing the OTSC before it, and determining whether he should enter an order granting emergent temporary custody to defendant's sister in the event defendant were arrested. That application should have been unsuccessful because defendant was seeking relief based upon speculation that she may be arrested in the future. See Crowe v. DeGioia, 90 N.J. 126, 132-34 (1982). And, although the FM judge could have requested the FV judge transfer the pending FV application to him for purposes of efficiency, he would then have been required to hear testimony before ruling on the FRO.

Instead, the FM judge found the TRO, which had been entered by a municipal court judge and reviewed and denied dismissal by the FV judge, frivolous, and sanctioned plaintiff for filing it.

5

The FM judge's dismissal of the TRO, without permitting testimony regarding the predicate act, cross-examination of witnesses, citing to the PDVA, or determining whether an FRO was necessary pursuant to the second prong of Silver, was in error. Specifically, the FM judge failed to make sufficient findings of fact and set forth conclusions of law as required by Rule 1:7-4.

We are aware the FM judge expressed concern plaintiff was abusing the litigation process by seeking an FRO to gain an advantage in the custody litigation. However, that determination, if supported by substantial, credible evidence, could have been made in the FV matter after the parties' testimony and sanctions could have been entered against plaintiff.

Additionally, although after the entry of an FRO, an FV judge may address custody of the children, and there is a presumption of custody to the non-abusive parent, N.J.S.A. 2C:25-29(b)(11), custody to the non-abusive parent is not automatic, N.J.S.A. 2C:25-29(b), and may be rebutted. Moreover, an FV judge may defer custody determinations to any other docket already addressing custody. See Finamore v. Aronson, 382 N.J. Super. 514, 520 (App. Div. 2006) (Explaining that "[i]f there is a pending FM, all reliefs except the restraints shall be incorporated into the FM with the restraints continuing in the FV docket and on the FRO. Subsequent applications or modifications for support, custody or parenting time should take place within the FM docket number."). An FV judge

6

may also refer custody to a pending case where the Division of Child Protection and Permanency is involved.

Because plaintiff was not afforded a hearing, we reverse, reinstate the TRO dated September 24, 2022, and remand the matter for an FRO hearing before a different judge. See Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005) (determining that "[i]n an abundance of caution" a remanded matter should be assigned to "a different judge for the plenary hearing to avoid the appearance of bias or prejudice based on the judge's prior involvement with the matter and his expressions" of doubt as to a party's credibility); R. 1:12-1(d); Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 1:12-1 (2024) (stating "the appellate court has the authority to direct that a different judge consider the matter on remand in order to preserve the appearance of a fair and unprejudiced hearing"). We take no position with respect to the outcome of the FRO hearing or whether sanctions should issue for abuse of process.

Reversed and remanded for an FRO hearing before a different judge. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

7