**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-6096-12T3

S.M.,

    Plaintiff-Appellant,

v.

K.M.,

    Defendant-Respondent.

APPROVED FOR PUBLICATION

December 26, 2013

APPELLATE DIVISION

_____

Argued December 3, 2013 — Decided December 26, 2013

Before Judges Fisher, Espinosa and Koblitz.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-785-12.

John M. Barbarula argued the cause for appellant (Barbarula Law Offices, attorneys; Mr. Barbarula, on the briefs).

James C. Jensen argued the cause for respondent (Laufer, Dalena, Cadicina, Jensen & Boyd, L.L.C., attorneys; Gregory D.R. Behringer, on the brief).

The opinion of the court was delivered by

KOBLITZ, J.A.D.

We granted plaintiff S.M. (Steve[1]) leave to appeal from a June 10, 2013 order preventing him from having any contact with his two children until the criminal charges against him are resolved. Steve seeks supervised therapeutic visits as recommended by two court-appointed experts. We reverse and remand for a hearing before the Family Part judge at which the prosecutor, criminal defense attorney and two family lawyers may be heard. We arrive at this conclusion relying on Rule 5:12-6 and a directive from the Administrative Office of the Courts (AOC).[2] See AOC Directive 03-09 (Directive) (relating to visitation when an abuse and neglect case is heard in the Family Part while a parent has criminal charges pending).

Plaintiff and defendant K.M. (Kim) were married in 1998 and had two children, Jim, born in 2004, and Mary, born in 2000. On November 18, 2011, plaintiff was served with a temporary restraining order (TRO) at his home based on allegations that Steve placed a loaded BB gun to Jim's head at some point between November 8, 2009 and November 11, 2011 and that he was abusive to Kim. The incident with the BB gun was reported to police by Jim's school after his teacher overheard Jim tell a friend that

---

[1] We use initials and fictitious names to protect the identity of the children.

[2] We note that an administrative directive has the force of law. State v. Morales, 390 N.J. Super. 470, 472 (App. Div. 2007).

"daddy put a gun" to his head and "dad is mean." Defendant, K.M. (Kim) admitted during her interview with the court-appointed expert that there is significant ambiguity with the child's statement.

After obtaining Steve's legally registered handgun, police discovered illegal hollow point bullets and plaintiff was later charged with a weapons offense.

On December 1, 2011, Steve filed a complaint for divorce. A January 3, 2012 order reflected the parties' consent to Kim retaining temporary custody of the children and Steve being prohibited from any "form of contact" with Kim. The consent order acknowledged that Kim voluntarily dismissed her TRO, relying on the January 3 no-contact order, and that violation of "the no contact provision of this Order by Plaintiff shall be considered an indicia of an act of domestic violence[.]" The consent order also provided that Steve "shall have visitation with the minor children of the marriage in accordance with the dictates of the Morris County Prosecutor's Office and/or the Court[.]"

In February 2012, the family judge appointed Lee Monday, Ph.D. to provide a visitation and custody evaluation of Steve. A week later, Steve consented to a drug and alcohol assessment to be performed by Gregg Benson, M.A., C.A.D.C., C.M.S.

In March 2012, the Division of Youth and Family Services[3] (Division) sent a letter to Kim explaining that it investigated allegations of abuse and neglect against Steve and "determined that child abuse was substantiated." The Division took no further action.

On June 4, 2012, Dr. Monday submitted a detailed, single-spaced, twenty-one page custody and visitation report with the court after interviewing all members of the family and administering psychological tests to Steve.[4] Kim told Dr. Monday that "[h]er children have clearly stated that they do not want any relationship with their father. They are traumatized and fearful of him. [Kim] does not believe that it would be best for them to even have supervised visits with [Steve]." The report concluded that the case "is essentially a classic he said, she said[]" in which Kim and Steve provided starkly different accounts of Steve's drinking habits and his relationship with their children. Dr. Monday found it noteworthy that the children referred to their relationship with

---

[3] The Division of Youth and Family Services has been renamed as the Division of Child Protection and Permanency as part of the reorganization of the Department of Children and Families pursuant to L. 2012, c. 16, eff. July 2, 2012.

[4] We note that this report was submitted five months before Steve was indicted, but nearly six months after Steve was served with a criminal complaint and after a judge determined there to be probable cause for the charges.

Steve using the collective "we," which, in the expert's opinion, made it "difficult to tell if it was truly the child's individual perception of the father or if it is a joint perception shared with the mother." "The goal for this family[,]" Monday opined, "is for [Steve] and his children to have a positive relationship." He also noted that the children must feel safe and Steve cannot drink alcohol in their presence. Dr. Monday recommended that the children see a psychologist or counselor with expertise in "high conflict divorce cases" and that Steve should join the sessions once the children develop rapport with the counselor. "What would follow depends on how these sessions go[,]" the report stated.

On August 3, 2012, the criminal judge maintained the "no contact" condition of bail, explaining that he would "follow a ruling from the family judge on that issue." On September 25, the family judge denied Steve's request for therapeutic visitation, finding that it would be contrary to the best interests of the children.

On November 12, 2012, Steve was indicted for second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4a, second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a, and fourth-degree aggravated assault, N.J.S.A. 2C:12-1b(4).

On March 14, 2013, Benson released a comprehensive, single-spaced, twenty-six page "Substance Use Disorder Evaluation" of Steve. Benson conducted several tests that are recognized in the field and formed the impression "from all the gathered information that [Steve] is a consistent blackout drinker to a degree much greater than he is aware and/or willing to admit." Among other recommendations, Benson concurred fully with Dr. Monday's visitation recommendations.

In April 2013, Steve again moved before the Family Part for therapeutic visitation with his children certifying that he had not seen them since November 2011. Steve stated that he was seeking psychological treatment and that he should be permitted visitation based on the recommendation of the two experts.

Without oral argument, the judge denied Steve any contact with his children.[5] In an attached statement to his June order, the motion judge gave as his only reason that "the Court is not convinced that granting Plaintiff's request for supervised therapeutic visitation would be in the best interest of the children during the pendency of the criminal proceedings against plaintiff." We granted leave to appeal "in the interest of

---

[5] The court did not hold oral argument, although requested by Steve if opposition was filed, because "oral argument would not have advanced the Court's understanding of these matters . . . ." We note that requests for oral argument should ordinarily be honored, especially in family motions. R. 5:5-4(a).

justice[,]" R. 2:2-4, because depriving children of all contact with their father is an extreme measure that, if improperly imposed and maintained for a lengthy period of time, could cause severe injury to the children. See V.C. v. M.J.B., 163 N.J. 200, 229, (explaining that permanent denial of visitation is such an "extraordinary proscription that it should be invoked only in those exceptional cases where it clearly and convincingly appears that the granting of visitation will cause physical or emotional harm to the children or where it is demonstrated that the parent is unfit[]"), cert. denied, 531 U.S. 926, 121 S. Ct. 302, 148 L. Ed. 2d 243 (2000); see also, N.J. Div. of Youth & Family Servs. v. F.M., 375 N.J. Super. 235, 264 (App. Div. 2005) (noting that experts are increasingly concerned about the harm to the child caused by the loss of a parent and are "recognizing the need for continued contact with a biological parent, even a flawed parent. . . ."). In the context of this case, where the Division could well have filed a complaint for abuse and neglect if Kim were not deemed a safe custodial parent, it is instructive to look at the law controlling child protective services cases.

Not only do parents have a constitutional right to enjoy a relationship with their children, In Re Guardianship of K.H.O., 161 N.J. 337, 346 (1999), children likewise have the right to

visit with their parents after they have been removed from the parent's home.  N.J.S.A. 9:6B-4A(e).  This is so even if the children verbalize a desire not to see the parent, as happened here.[6]  The Children's Bill of Rights states that a child has the right "to visit with [his or her] parents or legal guardians . . ." or to "otherwise maintain contact with [his or her] parents or legal guardian. . . ."  Ibid.  A child's best interests are generally fostered when both parents are involved with the child, assuring the child of frequent and continuing contact with both parties.  Finamore v. Aronson, 382 N.J. Super. 514, 523 (App. Div. 2006).

Rule 5:12-6 states that "when a criminal complaint has been filed against a parent or guardian arising out of the same incident as the [Division] action . . . the Family Part shall determine the nature and scope of parental or guardian visitation, if any . . . ."  The Rule further explains that upon "scheduling any hearing at which visitation conditions are to be imposed or modified, the court shall provide notice to the county prosecutor . . . ."  R. 5:12-6(a)(1).  The Rules of Court also provide that if a criminal court imposes a no contact order

---

[6] In determining custody, for example, the "preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision" is only one factor a court must consider.  N.J.S.A. 9:2-4(c).

as a condition of bail, as here, "such restrictions shall not affect contact authorized by an order of the Family Part in a child abuse/neglect case entered after any restrictions on contact was imposed as part of a bail order."  R. 3:26-1(b). Here, the criminal judge specifically deferred to the family judge as required by the Rule.

The Administrative Office of the Courts promulgated procedures for "co-occurring child abuse and domestic violence" cases in which an abuse and neglect case is filed concurrently with a complaint alleging domestic violence against the child. Directive at 2-9.  The aim of the Directive was to "coordinate the interface of policies . . . to ensure effective handling of cases of co-occurrence[]" when there is pending both a child protective services action and a criminal complaint against a parent.  Directive at 2.

The purpose of the directive is to provide "operational guidance" to judges and staff in achieving the statutory mandate of N.J.S.A. 2C:25-18, which is intended to protect "victims of violence that occurs in a family or family like setting by providing access to both emergent and long-term civil and criminal remedies . . . ."

The Directive points out the provision of Rule 5:12-6 requiring the inclusion of the prosecutor and criminal defense

A-6096-12T3

attorney in the hearing before the family judge to determine whether and what type of visitation to accord the accused parent. While the State submitted a letter to the criminal judge "strenuously" opposing any modification in bail conditions to allow Steve to see his children, in that letter the prosecutor simply reiterates the charges against plaintiff and their potential sentences. We do not know whether this letter was actually seen by the family judge.

Neither party requested a plenary hearing before the family judge nor on appeal. Thus, we leave to the sound discretion of the family judge whether such a hearing is necessary to decide this temporary visitation dispute or whether oral argument and consideration of documentary evidence is sufficient. See, Wilke v. Culp, 196 N.J. Super. 487, 502-03 (App. Div. 1984) (noting in a non-temporary visitation dispute that the Family Part ordinarily conducts a plenary hearing when the facts are contested), certif. denied, 99 N.J. 243 (1985).

We therefore remand this matter to the Family Part judge to determine whether supervised therapeutic visitation with Steve is in the best interests of the children. We direct the judge to follow the procedures set forth in Rule 5:12-6 and the Directive.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10                                              A-6096-12T3