RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2051-15T1

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

 Plaintiff-Respondent,

v.

S.B.,

 Defendant-Appellant.
_______________________________________

IN THE MATTER OF I.A.B., a minor.
________________________________________

 Submitted May 2, 2017 – Decided August 14, 2017

 Before Judges Koblitz, Rothstadt and Sumners.

 On appeal from Superior Court of New Jersey
 Chancery Division, Family Part, Essex County,
 Docket No. FN-07-0240-15

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Eric R. Foley, Designated
 Counsel, on the brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Joseph J. Maccarone,
 Deputy Attorney General, on the brief).

 Joseph E. Krakora, Public Defender, Law
 Guardian, attorney for minor (Danielle Ruiz,
 Designated Counsel, on the brief).
PER CURIAM

 In this Title 9 action, defendant S.B. 1 appeals from the

Family Part's February 24, 2015 fact-finding order determining

that, within the meaning of N.J.S.A. 9:6-8.21(c), she abused or

neglected her son, I.A.B. (Ian), who was born on October 30, 2014.2

Prior to Ian's birth, plaintiff New Jersey Division of Child

Protection and Permanency (Division) substantiated defendant for

causing the death of her other child, I.B. (Ida), for which she

was charged criminally. After her arrest, defendant was released

on bail, subject to conditions that prohibited her from having

custody or contact with her newborn son, unless otherwise ordered

by the Family Part.

 After Ian was born, the Division substantiated defendant for

abuse or neglect because defendant could not care for Ian under

the Law Division's order and she exposed him to an imminent risk

of harm based upon defendant's alleged role in her daughter's

death. The Division initiated this action and, at the conclusion

of the fact-finding hearing, a Family Part judge found that the

Division proved Ian was an abused or neglected child because

1
 We use initials and pseudonyms to protect the identity of the
child that is the subject of this action.
2
 S.N. (Seth), Ian's father, was a party to the Title 9 action.
He is not a party to this appeal.

 2 A-2051-15T1
defendant exposed him to a substantial risk of imminent harm and

there were no safe plans for his care.

 On appeal, defendant contends that the Division failed to

prove that Ian was abused or neglected as a result of her exposing

him to a substantial risk of harm because she had not been

convicted of any crime and had made adequate plans for her newborn

son. We disagree and affirm.

 At the fact-finding hearing held on February 24, 2015, the

Division called Patricia Reynolds, one of its caseworkers, who was

the only witness to testify for either party. Prior to her

testimony, the court admitted into evidence various Division

records without objection. Those records consisted of Division

investigation summaries, as well as Ida's hospital records and the

Law Division's October 29, 2014 order memorializing its July 7,

2014 oral decision setting forth defendant's bail restrictions.

The facts adduced from the caseworker's testimony and the documents

admitted into evidence were undisputed and are summarized as

follows.

 The Division received a referral on September 16, 2013,

regarding bruising observed on three-year-old Ida's body, which

led to an investigation of defendant for physical abuse. Ida

initially reported to her daycare provider that her mother had hit

her, but then stated the bruising occurred when she and defendant

 3 A-2051-15T1
had fallen while getting out of a car. The next day, a Division

investigator interviewed Ida and observed the bruises. When

questioned about the bruising, Ida said "mommy" and then began to

cry.

 The investigator also met on several occasions with

defendant, who provided inconsistent reasons for the bruising on

Ida's body. She denied causing bruising to Ida's arm and initially

stated she did not know where the bruising came from, then stated

it was the result of Ida scratching a rash, but later admitted

that she caused the bruising when she grabbed Ida's arm as they

crossed a street. Defendant also explained that bruises on Ida's

face were caused by a fall, but also attributed them to beads the

child wore while sleeping. She denied using corporal punishment,

but conceded she would sometimes "pop" Ida on the buttocks or

hand. The Division determined that the allegations of defendant

causing her daughter's bruising had been "established" by its

investigation.3

3
 Allegations that a child has been abused or neglected can
either be "substantiated," "established," "not established," or
"unfounded." N.J.A.C. 3A:10-7.3(c). In order for an allegation
to be either "substantiated" or "established," the Division must
show by a preponderance of the evidence that the child at issue
met the definition of "abused or neglected." Ibid.

 4 A-2051-15T1
 On September 20, 2013, Ida was brought to the hospital in

cardiac arrest, and she was pronounced dead shortly after her

arrival. Hospital personnel notified the Division of her death,

and it eventually learned from the medical examiner's office that

the child's death was deemed "suspicious." After an autopsy, the

police charged defendant with aggravated manslaughter. The

Division learned that Ida's death was caused by "blunt force trauma

to [her] torso, chest and [and that she sustained a] laceration

to her liver." Ultimately, the Division substantiated defendant

for having caused her daughter's death.

 After defendant's arrest, she appeared for a bail hearing on

July 7, 2014, and because she was pregnant at the time, the Law

Division imposed the restriction against her having custody or

contact with her child after she delivered. The day before Ian's

birth, the court entered an order memorializing its July 7 bail

restrictions. The order provided that defendant was prohibited

from having any contact with the anticipated newborn as a condition

of her bail, subject to any visitation ordered by the Family Part.

 When the Division learned about the restriction placed on

defendant, it began to make arrangements for the baby's placement,

working with defendant to find a suitable home with relatives.

During discussions with a Division caseworker, defendant denied

having caused her child's death. Despite defendant's suggestions

 5 A-2051-15T1
and the Division's efforts, various relatives had to be ruled out

from being caregivers for Ian for a variety of reasons.4

 After Reynolds testified, counsel for the parties presented

their closing arguments. In her closing statement, counsel for

defendant argued that "there was no risk of harm to [Ian] posed

by [defendant]" because the bail restriction ordered "she not have

custody of any child, nor any unsupervised contact [with] any

child. . . . The issuance of that condition of bail in that court

order at that time eliminated any substantial risk of harm that

[defendant] posed to [Ian]." Moreover, counsel contended that

defendant "had a plan in place" in which "she presented both her

sister, . . . her mother, . . . and a paternal relative" to care

for Ian and that "[t]his [action] would be appropriately proceeding

under Title 30 and not under Title 9."

 The Family Part judge rejected defendant's arguments and

entered a fact-finding order that stated Ian was at a "substantial

4
 Reynolds stated Ian was not placed with Seth because he had a
criminal trial pending and, in any event, he did not offer to take
his child. Moreover, defendant did not want the child placed with
the father. Additionally, the Division could not place the child
with his maternal grandmother because defendant was living in the
home with her mother. Although defendant offered to move in with
her sister, so the child could stay with the grandmother, the
sister's lease prevented her from allowing defendant to live with
her. Finally, a paternal aunt expressed willingness to care for
the child, but she was a "chain smoker." Accordingly, the Division
considered her a "last resort."

 6 A-2051-15T1
risk of harm due to the death of the older child in the home" and

the fact that defendant was "facing criminal charges related to

the death of the child." Addressing defendant's arguments about

her having a plan for Ian, the judge stated in his oral decision

that "[c]onsidering the nature of the seriousness of the charges,

[the] prior substantiation, the fact that the order provides that

a [f]amily [c]ourt [j]udge has to determine the conditions of

visitation," he was concerned about allowing defendant to make

arrangements for placement of the newborn child with family members

that would create a "likelihood that there's going to be a

violation of [the bail] order."

 After the fact-finding hearing, the judge approved the

Division's permanency plan for termination of parental rights

followed by adoption and, on December 10, 2015, it entered an

order terminating the abuse or neglect litigation as the Division

had filed its guardianship complaint.

 On appeal, defendant argues that the criminal charge "had not

yet resulted in a conviction" and "the record does not and cannot

demonstrate any correlation between the death of [Ida] and any

neglect [by defendant]." Accordingly, she argues, the criminal

charge "cannot form the basis of" an abuse and neglect finding.

Moreover, defendant avers the court's reliance on the bail

restriction is misplaced, as defendant "had a plan to have a

 7 A-2051-15T1
relative care for [Ian] at the time of his birth in anticipation

that she would continue to face the bail restriction." Defendant

contends the court failed to explain how "the existence of the

criminal charges, the bail restriction and prior Division

involvement with another child" placed [Ian] at an imminent risk

of harm. We disagree.

 We begin our review by recognizing it is limited and narrow.

In recognition of the special expertise of Family Part judges in

matters of parental abuse and neglect, we defer to findings

supported by substantial credible evidence in the record. N.J.

Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010).

We intervene, however, to ensure fairness if the judge's

"conclusions are 'clearly mistaken or wide of the mark.'" Id. at

226-27. (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196

N.J. 88, 104 (2008)). "Where the issue to be decided is an

'alleged error in the trial judge's evaluation of the underlying

facts and the implications to be drawn therefrom,' we expand the

scope of our review." N.J. Div. of Youth & Family Servs. v. G.L.,

191 N.J. 596, 605 (2007) (quoting In re Guardianship of J.T., 269

N.J. Super. 172, 188-89 (App. Div. 1993)). The trial judge's

interpretation of the law and the application of such legal

conclusions to the facts are subject to plenary review. See

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366,

 8 A-2051-15T1
378 (1995). In our review, we consider the totality of the

circumstances in abuse or neglect proceedings. N.J. Div. of Youth

& Family Servs. v. P.W.R., 205 N.J. 17, 39 (2011).

 "New Jersey's child-welfare laws balance a parent's right to

raise a child against 'the State's parens patriae responsibility

to protect the welfare of children.'" N.J. Div. of Child Prot. &

Permanency v. Y.N., 220 N.J. 165, 178 (2014) (quoting N.J. Dep't

of Children & Families v. A.L., 213 N.J. 1, 17-18 (2013)). "The

adjudication of abuse or neglect is governed by Title 9, which is

designed to protect children who suffer serious injury inflicted

by other than accidental means." N.J. Div. of Youth & Family

Servs. v. S.I., 437 N.J. Super. 142, 152 (App. Div. 2014) (citing

G.S. v. Dep't of Human Servs., 157 N.J. 161, 171 (1999)); see also

N.J.S.A. 9:6-8.21 to -8.73. Title 9 is intended to safeguard

children who have been abused or are at risk of imminent harm.

A.L., supra, 213 N.J. at 18, 22. "To that end, Title [9] provides

for the civil prosecution of a parent or guardian who abuses or

neglects a child." Y.N., supra, 220 N.J. at 178 (citing N.J.S.A.

9:6-8.33).

 N.J.S.A. 9:6-8.21(c)(4) provides that a child is "abused or

neglected" when his or her

 physical, mental, or emotional condition has
 been impaired or is in imminent danger of
 becoming impaired as the result of the failure

 9 A-2051-15T1
 of his [or her] parent or guardian, as herein
 defined, to exercise a minimum degree of care
 (a) in supplying the child with adequate food,
 clothing, shelter, education, medical or
 surgical care though financially able to do
 so or though offered financial or other
 reasonable means to do so, or (b) in providing
 the child with proper supervision or
 guardianship, by unreasonably inflicting or
 allowing to be inflicted harm, or substantial
 risk thereof, . . . or by any other acts of a
 similarly serious nature requiring the aid of
 the court . . . .

A parent "fails to exercise a minimum degree of care when he or

she is aware of the dangers inherent in a situation and fails

adequately to supervise the child or recklessly creates a risk of

serious injury to that child." Dep't of Children and Families v.

E.D.-O., 223 N.J. 166, 179 (2015) (quoting G.S., supra, 157 N.J.

at 181). Therefore,

 the primary question under Title 9 is whether
 [the child] . . . "ha[d] been impaired" or was
 in "imminent danger of becoming impaired" as
 a result of [his or her parent's] failure to
 exercise a minimum degree of care by
 unreasonably inflicting harm or allowing a
 "substantial risk" of harm to be inflicted.

 [A.L., supra, 213 N.J. at 22 (second
 alteration in original) (quoting N.J.S.A. 9:6-
 8.21(c)(4)(b)).]

 "Accordingly, Title 9 initially looks for actual impairment

to the child. . . . [W]hen there is no evidence of actual harm,

the focus shifts to whether there is a threat of harm." E.D.-O.,

supra, 223 N.J. at 178. "[T]he standard is not whether some

 10 A-2051-15T1
potential for harm exists." Id. at 183 (quoting N.J. Dep't of

Youth & Family Servs. v. J.L., 410 N.J. Super. 159, 168-69 (App.

Div. 2009)). "[A] finding of abuse and neglect [must] be based

on proof of imminent danger and a substantial risk of harm." Id.

at 178 (quoting A.L., supra, 213 N.J. at 23). "Predictions as to

probable future conduct can only be based upon past performance.

. . . We cannot conceive that the Legislature intended to

guarantee parents at least one chance to . . . abuse each child."

N.J. Div. of Youth & Family Servs. v. C.H., 414 N.J. Super. 472,

482 (App. Div. 2010) (quoting J. v. M., 157 N.J. Super. 478, 493

(App. Div.), certif. denied, 77 N.J. 490 (1978)), certif. denied,

207 N.J. 188 (2011). "[A] court need not wait until a child is

actually harmed by parental inattention or neglect before it acts

in the welfare of such child." N.J. Div. of Youth & Family Servs.

v. V.M., 408 N.J. Super. 222, 235-36 (App. Div.) (citing In re

Guardianship of D.M.H., 161 N.J. 365, 383 (1999)), certif. denied,

200 N.J. 505 (2009). Nor does harm to the child need to be

intentional in order to substantiate a finding of abuse or neglect.

N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 344

(2010).

 "Strict adherence to the statutory standards . . . is

important because the stakes are high for all parties concerned."

Y.N., supra, 220 N.J. at 179. Consequently, whether a parent has

 11 A-2051-15T1
engaged in acts of abuse or neglect is considered on a case-by-

case basis and must be "analyzed in light of the dangers and risks

associated with the situation," N.J. Dep't of Children & Families

v. R.R., 436 N.J. Super. 53, 58 (App. Div. 2014) (quoting G.S.,

supra, 157 N.J. at 181-82), and evaluated "at the time of the

event that triggered the Division's intervention." E.D.-O.,

supra, 223 N.J. at 170.

 At a fact-finding hearing, N.J.S.A. 9:6-8.44, the Division

must prove abuse or neglect by a preponderance of the evidence,

and "only competent, material and relevant evidence may be

admitted." N.J.S.A. 9:6-8.46(b)(2); see also P.W.R., supra, 205

N.J. at 32 (holding the State bears the burden to present proofs

to establish abuse or neglect, as defined in the statute); N.J.

Div. of Youth & Family Servs. v. S.S., 372 N.J. Super. 13, 24

(App. Div. 2004) (explaining the State must "demonstrate by a

preponderance of the competent, material and relevant evidence the

probability of present or future harm" to the minor child), certif.

denied, 182 N.J. 426 (2005). Proof of exposing a child to an

imminent danger and a substantial risk of harm includes evidence

of a parent's abuse or neglect of another child. N.J.S.A. 9:6-

8.46(a)(1) ("[P]roof of the abuse or neglect of one child shall

be admissible evidence on the issue of the abuse or neglect of any

other child of . . . the parent or guardian . . . ."). A

 12 A-2051-15T1
risk of harm may be shown "not only from [a parent's] past

treatment of the child in question but also from the quality of

care given to other children in [his or her] custody." N.J. Div.

of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 573-74

(App. Div. 2010) (quoting J. v. M., supra, 157 N.J. Super. at

493).

 Applying these guiding principles, we conclude that the

Family Part judge's finding of abuse or neglect was supported by

substantial credible evidence of the harm caused by defendant to

her deceased older child and defendant's inability to provide for

her newborn son's care. We find defendant's arguments to the

contrary to be without sufficient merit to warrant further

discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only

the following brief comment regarding the impact of a defendant's

bail condition on the determination of whether a child was abused

or neglected.

 A condition of pretrial release that restricts a parent's

contact with his or her child is subject to revision or vacating

by the Family Part. See R. 3:26-1(b); R. 5:12-6(a); see also S.M.

v. K.M., 433 N.J. Super. 552, 558 (App. Div. 2013). Contrary to

defendant's argument, the Family Part judge here did not rely on

the existence of the bail condition in determining that defendant

abused or neglected her son. Rather, the judge properly considered

 13 A-2051-15T1
the effect of the Law Division's order on defendant's ability to

be available to care for her son or have a safe plan for his care.

Absent an application by defendant or any of the other parties to

modify the restriction, see e.g. S.M., supra, 433 N.J. Super. at

554, the court's consideration of the restriction as entered by

the Law Division was proper.

 Affirmed.

 14 A-2051-15T1