RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5168-14T2

M.S.,

 Plaintiff-Respondent,

v.

J.S.,

 Defendant-Appellant.

 Argued November 2, 2016

 Before Judges Accurso, Higbee, and Manahan.

 Re-argued Telephonically February 28, 2017 –
 Decided April 13, 2017

 Before Judges Alvarez, Accurso, and Manahan.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part, Bergen
 County, Docket No. FV-02-1202-11.

 Jonathan H. Blonstein argued the cause for
 appellant (Weinstein Lindermann & Weinstein,
 attorneys; Jeffrey P. Weinstein, of counsel
 and on the briefs; Mr. Blonstein, on the
 briefs).

 Demetrios K. Stratis argued the cause for
 respondent (Ruta, Soulios & Stratis, LLP,
 attorneys; Mr. Stratis, on the brief).
PER CURIAM

 Defendant J.S. appeals a May 28, 2015 eighteen-paragraph

order that, in its most significant aspect, suspended without

explanation a two-year therapeutic reunification process conducted

over Skype. The order also awarded plaintiff M.S., defendant's

former wife, counsel fees of $4124 and imposed a penalty on

defendant of $10,000. It continued defendant's obligation to

provide information regarding his 2010 convictions for two

financial frauds and his visa application. Additionally, the

order granted "[p]laintiff's request that an adverse inference be

inferred against defendant in determining future parenting time

and future conditions of such parenting time . . . ." We reverse.

 The parties married in 1999. Defendant is English, plaintiff

Canadian, and the family lived in England until plaintiff's

relocation to the United States in 2007 with the parties' two

daughters, who are now seventeen and fifteen years old. Defendant

remained in England, where he has lived continuously to this day.

He was incarcerated for two and a half years for the financial

frauds, thereafter placed on parole, and paid a substantial fine.

 While imprisoned, defendant threatened plaintiff during a

phone conversation. As a result, on December 1, 2010, a final

restraining order (FRO) under the Domestic Violence Act, N.J.S.A.

 2 A-5168-14T2
2C:25-17 to -35, was entered. The order barred defendant from

contact with plaintiff or the children.

 In January 2012, an amended order issued permitting contact

between defendant and the children, through letters, and directing

that reunification visitation therapy commence, which resulted in

Skype sessions between father and children. On April 12, 2012,

Paul Dasher, Ph.D., was appointed the reunification therapist.

Defendant began his own psychiatric treatment in 2013. Defendant's

mother has travelled here to visit the children on one occasion.

 On April 3, 2014, Dr. Dasher recommended face-to-face contact

either by way of visits in the United States, England, or Canada.

Canada does not restrict visitors to the country who have criminal

histories; the United States does. No action appears to have been

taken on Dr. Dasher's recommendation.

 Initially, Dr. Dasher was permitted to record the sessions

and share them with the parties and their attorneys. Eventually

that stopped. The children expressed discomfort with being

photographed by defendant while the family was Skyping, although

any explanation for this discomfort is absent from the record.

 Plaintiff brought the children to Dr. Dasher's office on

March 1, 2015 for a regular Skype visit, but spoke to him

beforehand. She told Dr. Dasher that while reading a report

prepared by defendant's therapist regarding his ongoing treatment,

 3 A-5168-14T2
he commented that he had seen a recording of a Skype session

between father and daughters.1 The session scheduled for that

date did not take place.

 Dr. Dasher, in a neutrally worded communication to the court

and counsel, noted that the issue could have been raised earlier

in the week, which would have allowed him time to address the

problem without "the resulting awkwardness and confusion" created

by the last minute announcement. We cannot discern whether on

that date the children refused to visit with their father, or if

their mother decided not to remain for the Skype visit. Defendant

later certified that he recorded the one Skype session because he

wanted to show it to his therapist to obtain more detailed guidance

on how to interact with his daughters. No Skype sessions have

taken place since then.

 No order prohibited defendant from recording the sessions,

but he did so without anyone's consent. He immediately agreed to

not record any future sessions.

 Starting in 2012, at plaintiff's request, the judge ordered

defendant to provide detailed information regarding his

convictions and sentence. The judge's rationale for doing so is

1 Although defendant's mental health is not an issue, plaintiff
read at least that report regarding defendant's treatment. We do
not know from this record the reason plaintiff had access to
information regarding defendant's therapy.

 4 A-5168-14T2
not included in the record. When asked at oral argument to explain

the reason for the order, plaintiff's counsel said providing the

information was intended to build trust. In the intervening three

years, plaintiff filed approximately a dozen motions to compel

more and more detailed "discovery" regarding the charges,

sentence, and defendant's status on parole. Defendant was ordered

to pay some $24,011.50 in total counsel fees as a result of these

applications.

 The "discovery orders" also compelled defendant to provide

all the paperwork he submitted in support of his visa application

to travel to the United States to see the children. Nothing in

the record explains the reason for the entry of this order. When

asked at oral argument about the obligation, plaintiff's counsel

said the disclosures were intended to establish defendant's

credibility.

 The judge did not explain his reasoning, orally or in writing,

for suspending the therapeutic visitation process on May 28, 2015.

We quote some paragraphs taken from the order:

 6. THAT Plaintiff's request that the entire
 reunification process be suspended until
 further Order of the Court is GRANTED; which
 is in the children's best interest.
 Defendant's contact with the children going
 forward will be by letter only.

 . . . .

 5 A-5168-14T2
 12. THAT Plaintiff's request that an adverse
 inference be inferred against the Defendant
 in determining future parenting time and
 future conditions of such parenting time is
 GRANTED; plaintiff's request to strike the
 defendant's pleadings is moot because no
 pleadings were filed.

 . . . .

 14. THAT defendant's request that Dr.
 Dasher's recommendations shall have binding
 authority on the parties is hereby DENIED as
 the Defendant has violated multiple past court
 orders and has recorded a past SKYPE
 reunification session with Dr. Dasher without
 authority to do so; this denial is in the best
 interest of the children.

 15. THAT defendant's request that the
 reunification therapy, supervised by Dr.
 Dasher, proceed to in-person supervised
 parenting time in Canada, United Kingdom,
 and/or United States, and the mode and manner
 of which being supervised by Dr. Dasher is
 DENIED. Paragraph 6 above orders that the
 entire reunification process is hereby
 suspended.

 Defendant raises issues for our consideration in seven

separate point headings. We address them in combination: the

ongoing discovery obligations as to defendant's prior convictions,

sentence, and any visa application; termination of contact with

his children; counsel fees and the $10,000 sanction; and

defendant's request for the transfer of the matter to a different

judge.

 6 A-5168-14T2
 Findings of fact by the family court are binding on appeal

"when supported by adequate, substantial, credible evidence."

Clark v. Clark, 429 N.J. Super. 61, 70 (App. Div. 2012). However,

"a trial court's interpretation of the law and the legal

consequences that flow from established facts are not entitled to

any special deference." Manalapan Realty, L.P., v. Manalapan Twp.

Comm., 140 N.J. 366, 378 (1995).

 It is well-established that a judge has a duty to make

findings of fact and conclusions of law "on every motion decided

by a written order that is appealable as of right." R. 1:7-4(a).

"Failure to perform that duty 'constitutes a disservice to the

litigants, the attorneys and the appellate court,'" and may be

grounds for reversal. Curtis v. Finneran, 83 N.J. 563, 569-71

(1980)(quoting Kenwood Assocs. v. Bd. of Adj. Endglewood, 141 N.J.

Super. 1 (App. Div. 1976)).

 I.

 The record provided to us does not include any findings of

fact or conclusions of law reached by either of the two Family

Part judges who entered the orders requiring defendant to disclose

detailed information regarding his convictions and sentence, or

his visa application. To our knowledge, this is not standard

practice in the Family Part. We cannot see the relevance between

defendant's white collar 2010 convictions and contact with his

 7 A-5168-14T2
children. In the absence of any established precedent, fact in

the record, or findings of fact and conclusions of law as required

by Rule 1:7-4(a), which support disclosure, we reverse. We reach

the same conclusion for the same reasons regarding defendant's

pending visa application.

 In the unlikely event that he were to gain entry to this

country, as the FRO remains in effect, he must advise his attorney

in advance of his anticipated arrival in order to arrange to see

the children. Defendant is still bound by the terms of the amended

FRO.

 II.

 It is troubling to read through the reports included in the

appendix which indicate the children express fear and loathing of

their father in terms that to an outsider seem disproportionate

to their family history. In any event, all parents, even if

convicted of crimes, are entitled to contact with their children.

S.M. v. K.M., 433 N.J. Super. 552, 558 (App. Div. 2013).

 In S.M., a father struggled with severe alcoholism, and at

one point, while intoxicated, held a BB gun to his son's head.

Id. at 554. He was actually charged with second-degree endangering

the welfare of a child, N.J.S.A. 2C:24-4(a), and as a condition

of his bail in the criminal matter, was barred from contact with

his children. Id. at 556. The parallel divorce action pending

 8 A-5168-14T2
between the parties also barred contact. Id. at 555-57. The

children refused to see their father. Id. at 558. As we said:

 Not only do parents have a constitutional
 right to enjoy a relationship with their
 children, In re Guardianship of K.H.O., 161
 N.J. 337, 346 (1999), children likewise have
 the right to visit with their parents after
 they have been removed from the parents' home.
 N.J.S.A. 9:6B-4A(e). This is so even if the
 children verbalize a desire not to see the
 parent, as happened here. The children's bill
 of rights states that a child has the right
 "to visit with [his or her] parents or legal
 guardians . . ." or to "otherwise maintain
 contact with [his or her] parents or legal
 guardian. . . ." Ibid. A child's best
 interests are generally fostered when both
 parents are involved with the child, assuring
 the child frequent and continuing contact with
 both parties. Finamore v. Aronson, 382 N.J.
 Super. 514, 523 (App. Div. 2006).

 [Ibid.]

 We noted that our court rules and an Administrative Office

of the Courts Directive outline the procedure for modification of

bail conditions to allow for communication between parents and

children in just these types of scenarios. Id. at 558-59 (citing

R. 5:12-6); Administrative Directive No. 03-09, Co-Occurring Child

Abuse and Domestic Violence – Operational Guidance (May 29, 2009),

www.judiciary.state.nj.us/directive/2009/dir_03-09.pdf. That

father, who suffered from substance abuse issues and threatened

his young child with a firearm was nonetheless entitled to

therapeutic reunification visitation. S.M., supra, 433 N.J.

 9 A-5168-14T2
Super. at 560. Certainly, this father is equally entitled to

therapeutic reunification visitation.

 No doubt plaintiff, as a loving parent, is interested in

seeing the children thrive emotionally. A positive relationship

between them and their father will only contribute towards their

mental health.

 III.

 We do not agree with defendant that Dr. Dasher's

recommendations were binding on the judge. A court is never

required to accept the recommendation of a court-appointed expert.

See R. 5:3-3(g); City of Long Branch v. Liu, 203 N.J. 464, 491

(2010) (holding that a fact-finder is "not bound to accept an

expert's opinion in whole or even in part") (citing State Highway

Com. v. Dover, 109 N.J.L. 303, 307 (E.&A. 1932)).

 In this case, however, the record does not disclose the reason

Dr. Dasher's measured and thoughtful recommendations were not

accepted. Once defendant agreed he would no longer record any

session, the sessions should have continued in the normal course

focused towards the goal of face-to-face contact when

therapeutically possible. The record does not support the

"suspension," effectively the termination of, the Skype sessions.

 10 A-5168-14T2
 IV.

 It was error for the judge to order, at plaintiff's request,

that "an adverse inference be inferred against the Defendant in

determining future parenting time and future conditions of such

parenting time . . . ." We cannot discern the judge's intent from

the language he used. In any event, neither the record nor any

precedent we are aware of supports the decision.

 An adverse inference is ordinarily employed where one party

has engaged in spoliation of evidence. See Rosenblit v. Zimmerman,

166 N.J. 391, 400-02 (2001). Adverse inferences are also granted

as a sanction for failure to call an available witness in criminal

cases. State v. Clawans, 38 N.J. 162, 170 (1962). There may be

other scenarios in which adverse inferences are imposed. The

adverse inference in this case, imposed without explanation,

preemptively sanctions defendant in his future interactions with

his children. Entry of that order was an inexplicable abuse of

discretion.

 V.

 Plaintiff was awarded $4124 in counsel fees and a $10,000

sanction based on her claim that defendant was not compliant with

the court orders regarding discovery. We do not agree that he was

not compliant. Defendant supplied multiple documents over

multiple years about his criminal offenses. He was compelled to

 11 A-5168-14T2
provide copies of his visa application. Without findings of fact

and conclusions of law, no sanctions or fees should have been

imposed.

 Courts have many options with regard to obtaining compliance

with orders, including monetary penalties. The imposition in this

case of such a significant sanction, however, in light of the

questionable value of the discovery in the first instance, is

also an abuse of discretion. See Ridley v. Dennison, 298 N.J.

Super. 373, 381 (App. Div. 1997) (holding that an "overwhelmingly

punitive" sanction is "improper without the benefit of proceeding

under Rule 1:10-2 and its safeguards.").

 It would be inequitable to compel defendant to pay additional

counsel fees. Nothing is known regarding the parties' financial

situation, and no consideration was given to the Rule 5:3-5(c)

factors. Since the judge did not engage in the analysis required

by rule, statute, and equity, the monetary aspects of the order

are reversed.

 VI.

 Lastly, we address defendant's request that the matter be

scheduled before a different judge. We are sufficiently troubled

by the unsupported decision ending contact between father and

children as a result of an inconsequential incident, that we agree

the matter is best considered by another judge. In the absence

 12 A-5168-14T2
of findings of fact or conclusions of law, we can only assume that

this judge is wedded to his negative view regarding defendant's

conduct, which view is not supported by the record before us. See

Johnson v. Johnson, 390 N.J. Super. 269, 275-76 (App. Div. 2007);

Carmichael v. Brian, 310 N.J. Super. 34, 49 (App. Div. 1998).

 VII.

 Thus, the entire May 28, 2015 order is reversed. This

effectively returns the parties to the visitation status quo,

which implemented a therapeutic visitation program. Counsel shall

promptly notify Dr. Dasher to reach out to the parties in order

to begin anew in the manner, given the intervening two years, that

he believes would be most productive after this long hiatus.

 Reversed.

 13 A-5168-14T2