**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1613-19T3

G.T.,

    Plaintiff-Respondent,

v.

Y.A.,

    Defendant-Appellant.

_____

Submitted October 26, 2020 – Decided November 16, 2020

Before Judges Sabatino and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0538-05.

The Salvo Law Firm, PC, attorneys for appellant (Karen N. Grayson-Rodgers, on the briefs).

Weinstein Family Law, attorneys for respondent (Jeffrey P. Weinstein, of counsel and on the brief; Evan R. Weinstein, on the brief).

PER CURIAM

This post-judgment divorce case returns on appeal after a two-year interval.[1] Once again, the divorced parents' dispute stems from issues concerning their two children. Since the divorce, the two children have been residing with the mother, plaintiff G.T., as the parent of primary residence.[2]

The record reflects that in or about September 2017, A.A., the older child, ceased all communication with the father, defendant Y.A. Apparently, A.A. was upset about her father not appearing for certain scheduled parenting time, and also because of the allegedly "humiliating" manner in which he treated her and her sister. The father contends the children have resisted communicating with him due to alienation caused by the mother.

As a result of this conflict, the court appointed a guardian ad litem ("GAL") for the two children. The GAL, in turn, suggested the engagement of a reunification expert to attempt to repair the parent-child relationship.

On September 14, 2017, Judge Gallina-Mecca entered two companion orders. One order required A.A. to attend therapy with a therapist, Renee Schlessinger, M.S.W., and for the father to be involved in that process as deemed

---

[1] The previous appeal, which concerned counsel fees, was decided in an unpublished opinion, Docket No. A-5567-16T3 issued on December 4, 2018.

[2] We use initials to protect the children's privacy. R. 1:38-3(d)(13).

necessary. The second was an Order to Show Cause as to why the therapy should be with the therapist of the mother's choosing, and why the father should be compelled to cooperate in such therapy.

In February 2018, after meeting with each member of the family, the reunification expert, Justin Misurell, Ph.D., issued a written report. In that expert report, Dr. Misurell found that both children exhibited "significant signs of anxiety and distress at the idea of spending time with their father." He recommended that prior to reunification, the father should attend therapy.

The father rejected Dr. Misurell's recommendation because it called for his therapy sessions to be non-confidential, while his daughter's sessions with Ms. Schlessinger were confidential. About a year later, the father chose to begin individual therapy with a different provider, Dr. Matthew Zuch, without the involvement of his children.

On August 17, 2018, the trial court denied the father's motion to require joint reunification therapy with A.A. The court also denied the mother's request for counsel fees. Shortly thereafter, in October 2018, the younger daughter, M.A., also ceased communication with the father.

In June 2019, the father's counsel contacted the mother's counsel seeking updates on the children's lives. Between June 2019 and September 2019, the

father, the mother, and the GAL exchanged letters regarding whether the father should be supplied with weekly informational updates about the girls. The GAL concluded the father's requests for the mother to act as a "conduit" for life updates on the children was unfair, and against the alleged wishes of the girls. Instead, the father was given a short update on the well-being and major life events of his children, such as their grades, SAT scores, efforts to obtain driver's licenses, college applications, and so on. It also came to light that the father had sent a text message to his daughters, the content of which the GAL and the mother found inappropriate.

In response to the GAL's denial of his requests, the father moved in October 2019 for an order compelling the mother to provide him with weekly updates and also requiring her to include him in decisions regarding the children's health, education and welfare pursuant to his rights as a joint legal custodian. The mother opposed the motion and cross-moved for counsel fees and other equitable relief.

After oral argument on the motions, on November 18, 2019, Judge Gallina-Mecca entered an order with several facets. Among other things, the order required the father to continue his therapy and called for the respective therapists to consult with one another. The order also permitted the GAL to

share with the father, albeit not on a strict weekly basis, periodic updates on the children's health and lives after the GAL consulted with the therapists.

During her oral decision, the Family Part judge elaborated upon the best interests of the children, as reflected in the record:

> This is not a typical situation. And if it were a typical situation, absolutely joint custodial parent would have unfeddered [sic] access to all information concerning the children, their activities, their education, their health, their welfare, their well-being, and medical information.
>
> I am faced with two children ages 17 and 15 who by all accounts have suffered some type of trauma as a result of their relationship with their father. . . .
>
> In any event, I am encouraged by the fact that he's now willing to follow the map that has been provided to him by the guardian ad litem and the professionals that are involved with this case. But I cannot overlook the fact that it's taken him almost two years to get on board with this plan. And what's happened in those two years is that the schism between he and his children has unfortunately widened to the point where they are fearful and where they -- and at least [A].A. particularly has [a] tremendous amount of anxiety with respect to that whole -- the whole situation with her father. But they are pleading on -- with this court as conveyed to me by their guardian ad litem, that they do not want their father to have any information concerning their lives and their activities.
>
> You know, I recognize that M.A. is not engaged in therapy, but I think that if this is going to work at

5

some point, she is going to need to engage in reunification therapy at -- at the very least.

But nevertheless, I have grave concerns about these girls. And, you know, this not unlike the situation I was faced with I think back in 2015 with the dancing [dispute]. And what I said then and I believe the parenting coordinator at the time had said the same thing is, you know, when you push kids the fear is that they're going to recoil and that their reaction is going to be even worse than what it is right now. And that's what I'm seeking to avoid.

The judge further noted she was invoking her parens patriae responsibility "to protect [the children's] emotional well-being." The judge added, "I feel very strongly that it would not be in the children's best interest at this particular time" for the father to have more information than minimally necessary. The judge also explained that she did not want to compromise the position of the GAL, who has developed a trusting relationship of credibility with the girls.

Following the disposition of the motion and cross-motion by order entered on November 18, 2019, the mother's attorney submitted to the court a certification of services. The father opposed the fee shifting as unjustified, although he did not contest the hourly rate or computation of attorney time.

The judge then entered an order on December 11, 2019, accompanied by a written Statement of Reasons, awarding the mother $3,212.50, representing one-half of the total counsel fee sought. The Statement of Reasons discussed

6

various pertinent factors for fee shifting in Family Part cases under Rule 5:3-5(c) and Rule of Professional Conduct 1.5. The judge also noted the father's financial position is "vastly superior" to that of the mother, and he "admittedly earns in excess of $2,000,000.00 per year," although the mother has the means to support the children alone.

The father appeals, contending the judge arbitrarily denied the full relief he had sought in his motion. He contends the court's ruling without a plenary hearing is tantamount to a deprivation of his parental rights without due process. The father also contends the judge improperly imposed the fee award without sufficient justification or analysis. The mother has not cross-appealed.

In considering these points on appeal, we are guided by settled principles of review. We will generally not disturb the trial court's findings in a non-jury case unless such findings and legal conclusions are "manifestly unsupported by or inconsistent with" evidence in the record, so as to "offend the interests of justice." Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84 (1974) (quotation omitted); see Finamore v. Aronson, 382 N.J. Super. 514, 519 (App. Div. 2006) (citing Cesare v. Cesare, 154 N.J. 394, 412 (1998) and applying Rova Farms in the context of parental visitation rights).

A-1613-19T3

In addition, we afford particular deference to the special expertise of the trial court in Family Part disputes. Cesare, 154 N.J. at 411-13; see also Pascale v. Pascale, 113 N.J. 20, 33 (1988).

Further, we will not disturb a counsel fee award in a matrimonial case under Rule 5:3-5(c) except "only on the 'rarest occasion', and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

Applying these familiar deferential standards of appellate review, we affirm the trial court's decisions in all respects, substantially for the wise reasons expressed by Judge Gallina-Mecca in her rulings. We add only a few remarks by way of amplification.

The father rests much of his argument upon the terms of the parties' divorce agreement and its designation of joint legal custody to both parents. However, it is well established that "a court may look past labels" in custodial agreements because they are not conclusive proof of joint legal or physical custody of the children. Mamolen v. Mamolen, 346 N.J. Super. 493, 498-99 (App. Div. 2002); see also Fall & Romanowski, N.J. Family Law, Child Custody, Protection & Support § 23:2-1 (2019).

Notwithstanding a parent's presumptive fundamental rights to the care and companionship of a child, those parental rights may be restricted when the parental relationship causes the child physical or emotional harm.  Wilke v. Culp, 196 N.J. Super. 487, 496-97 (App. Div. 1984).  In evaluating whether such restrictions are warranted, the court's primary concern is the best interests of the child.  Id. at 497.

One aspect of parental rights is the "general right of access to records and information pertaining to their unemancipated minor child, including medical, dental, insurance, child care, motor vehicle and educational records, regardless of whether the child resides with the parent."  Fall & Romanowski, §8:3-1.

With respect to a child's education, N.J.S.A. 18A:36-19 specifies that a child's school records (including student health records) are generally required to be provided to the parent or guardian, "except as may be inconsistent with reasonable protection of the persons involved."  (Emphasis added).  See also N.J.A.C. 6A:32-7.5(e)(1), (3) (granting a parent a presumptive right to access a child's student records).

A parent's enumerated rights on custodial matters are qualified, however, by the multiple factors set forth in N.J.S.A. 9:2-4, which require courts to evaluate a child's best interests.  Faucet v. Vasquez, 411 N.J. Super. 108, 118

(App. Div. 2009) (stating "the touchstone" of all custody cases is the child's best interest).

Here, the Family Part judge evaluated the children's best interests and reached a fair and sensible resolution. On the one hand, she balanced the father's interests in being apprised of the ongoing health, education, welfare, and activities of his daughters. On the other hand, she weighed the interests and preferences of the children and their desire to not have undue interference by or conflict with their father. In striking that balance within her wide discretion, the Family Part judge appropriately took into account the input of the GAL and the expert.

The father's reliance upon our opinion in S.M. v. K.M., 433 N.J. Super. 552 (App. Div. 2013), is misplaced. That case dealt with the interplay between criminal and family courts in determining visitation rights. In S.M., a father appealed a Criminal Part judge's order that prevented any contact with his two children during the pendency of criminal weapons and domestic violence charges. The children had reported that they did not wish to see him, and a twenty-six-page evaluation stated that he had a significant drinking problem. Id. at 555-57. We remanded that matter for a plenary hearing in the Family Part because Rule 5:12-6, in such contexts, calls for a "hearing before the family

judge" on visitation issues, with the participation of the prosecutor and criminal defense attorney handling the related criminal matter. Id. at 559 (emphasis added).

There is no parallel criminal case here. S.M. does not stand for the proposition that a plenary hearing is always required each time that parents disagree over custodial issues. In fact, in some instances, such as this one, a sensible resolution of the family dispute can be determined based on the submitted record. See, e.g., Barblock v. Barblock, 383 N.J. Super. 114 (App. Div. 2006).

The father's right to information has been largely accommodated by the trial court, bearing in mind the concerns and best interests of the children. Moreover, if the court-ordered arrangement is not, in practice, serving the children's welfare, either party can seek further relief from the trial court, with the caveat that repetitive litigiousness should not be encouraged.[3]

Lastly, the modest partial counsel fee award to the mother was plainly not an abuse of discretion, and we are satisfied the judge gave ample reasons for it.

---

[3] The older daughter, A.A., apparently turned eighteen in May 2020. If that birthdate is accurate, there is a rebuttable presumption that she has been emancipated, which may render all or much of this analysis moot as to her. See Dolce v. Dolce, 383 N.J. Super 11, 17 (App. Div. 2006).

To the extent we have not addressed them, all of the other arguments brought in this appeal, including the claim of hearsay violations, do not warrant further discussion. Rule 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1613-19T3